IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOIS M. DAVIS,<br>　　　　Plaintiff, | §<br>§<br>§ | |
| V. | § | CIVIL ACTION NO. 4:12-CV-00131 |
| | §<br>§ | |
| FORT BEND COUNTY, TEXAS<br>　　　　Defendant | §<br>§ | DEFENDANT DEMANDS A JURY |

## DEFENDANT'S (FORT BEND COUNTY, TEXAS) MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, Fort Bend County, Texas, and hereby makes and files this Motion for Summary Judgment, in the above referenced action, and would respectfully show the following:

### I.
### INTRODUCTION

Plaintiff, Lois M. Davis, filed suit against Fort Bend County, Texas, claiming religious discrimination and retaliation under Title VII, as well as intentional infliction of emotional distress. The parties have engaged in written and oral discovery, with the discovery period ending November 30, 2012. The dispositive motion deadline is January 31, 2013. The Plaintiff's claims must fail as a matter of law because the Plaintiff has failed to establish a *prima facie* case of religious discrimination and retaliation, and Fort Bend County has legitimate, non-discriminatory reasons for its actions.

### II.
### UNDISPUTED FACTS

1.　　　　Plaintiff was hired by Defendant on or about December 17, 2007, as Desktop Support Supervisor. *See Plaintiff's Original Complaint.*

2. Plaintiff's employment with Defendant was supervisory in nature and Plaintiff supervised approximately seven (7) employees. *See* Exhibit A, Organization Chart at time of Plaintiff's termination.

3. In July 2011, the construction of the 270,000 sq. ft. Fort Bend County Justice Center was completed, consisting of 18 courts/courtrooms, District Clerk Offices, County Clerk's Offices, Grand Jury Courtroom, District Attorney's Offices, Bailiff Area, Law Library and a Jury Assembly Hall. *See* Exhibit B, Fort Bend Herald (local newspaper) dated July 6, 2011.

4. Plaintiff was informed in March or April, 2011, that the physical move of the Fort Bend County Court's System to the Justice Center was scheduled for the July 4, 2011 holiday weekend. (Ex. C: Pl. Dep. at 59:23-60:3).

5. As the Desktop Support Supervisor, Plaintiff's role in the move to the Justice Center was to assist with the testing of the computers once the computers had been moved by the movers and make sure the computers had been set-up properly and ready to go. (Ex. C: Pl. Dep. at 55:15-24).

6. Plaintiff was told she was required to work on Sunday, July 3, 2011 and her failure to work that day would result in disciplinary action, up to and including termination. (Ex. C: Pl. Dep. at 81:14-21).

7. Plaintiff failed to work on Sunday, July 3, 2011, due to "breaking ground for a new church and feeding the community, 3000 plus people." (Ex. A: Pl. Dep. at 81:6-13).

8. Plaintiff was not at work on Sunday, July 3, 2011. (Ex. C: Pl. Dep. at 80:10-13).

9. Plaintiff was terminated for failing to report to work on Sunday, July 3, 2011.

### III.

### SUMMARY OF ARGUMENT

Plaintiff's lawsuit arises because she was terminated for failing to report to work on

Sunday, July 3, 2011. Plaintiff was the Desktop Support Supervisor for the Information Technology Department at Fort Bend County. In June 2011, the construction of the 270,000 sq. ft. Fort Bend County Justice Center was completed, consisting of 18 courts/courtrooms, District Clerk Offices, County Clerk's Offices, Grand Jury Courtroom, District Attorney's Offices, Bailiff Area, Law Library and a Jury Assembly Hall. The move from the existing courthouse to the Justice Center was scheduled for the July 4, 2011 weekend, a three-day/holiday weekend. This was the only time Plaintiff was required to work on a Sunday, due to the enormity of the tasks that had to be completed so that the courts could open for business on Tuesday, July 5, 2011.

## IV.

## FACTUAL BACKGROUND

Plaintiff learned that the move to the Justice Center was scheduled for the July 4, 2011 holiday weekend in March or April, 2011. (Ex. C: Pl. Dep. at 59:23-60:3). Plaintiff informed her supervisor, Kenneth Ford, that she was unable to work on Sunday, July 3, 2011 because of an event at Plaintiff's church. (Ex. C: Pl. Dep. at 70:2-13). The activity that kept Plaintiff from working on Sunday, July 3, 2011, was not a religious service, but was "breaking ground for a new church and feeding the community, 3000 plus people." (Ex. C: Pl. Dep. at 81:6-13). Plaintiff claims she informed her supervisor that she could work later in the day on Sunday after the ground-breaking event ended; however, Defendant disputes this allegation and asserts that Plaintiff requested the entire day off on Sunday, July 3, 2011. Plaintiff's supervisor, Kenneth Ford, informed Plaintiff that if she did not show up for work on Sunday, July 3, 2011, she would be subject to disciplinary action, up to and including termination. (Ex. C: Pl. Dep. at 81:14-21). Other employees of the Information Technology Department requested permission to attend church services on Sunday, July 3, 2011, but their request was also denied due to the urgent nature of the move. (Ex. D, Matere Aff.). Plaintiff did not report to work on Sunday, July 3, 2011. (Ex. C: Pl. Dep. at 80:/10-13). Plaintiff was terminated from employment with Fort Bend County on or about July 6, 2011. (Ex. C: Pl. Dep. at 87:10-24).

## SUMMARY JUDGMENT STANDARD

The issue before the Court is whether Plaintiff can establish a genuine issue of material fact on each of her claims. Summary judgment is proper when the pleadings and record taken as a

whole demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  A fact is "material" when it affects the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.  A dispute regarding a material fact is "genuine" only if the evidence produced is sufficient enough for a reasonable jury to return a verdict in favor of the non-movant. *Anderson,* 477 U.S. at 248.

When a defendant moves for summary judgment, the defendant need not support its motion with affidavits or other evidence negating the movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). . The defendant meets its summary judgment burden by merely pointing to the absence of evidence supporting the non-movants case. *Celotex,* 477 U.S. at 325.

Once the moving party satisfies its summary judgment burden, the non-movant may not rely on naked assertions of a dispute, but must adduce admissible evidence creating a fact issue on each essential element of her claim. *Anderson,* 477 U.S. at 255-56; *Celotex,* 477 U.S. at 322-23. The non-movant must do more than simply show that there is some metaphysical doubt concerning the material facts. *Matsushita Elec. Indus. V. Zenith Radio,* 475 U.S. 574, 586 (1986).  The non-movant must set forth specific facts sufficient to raise a genuine issue for trial, not mere denials, vague allegations or legal conclusions. *Celotex,* 477 U.S. 322-23; *Delta Computer Corp. v. Frank,* 196 F.3d 589, 590 (5th Cir. 1999).  To overcome summary judgment, the non-movant must "identify specific evidence in the record and articulate the 'precise manner" in which that evidence supports its claims."  *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994). Further, "[m]ere conclusory allegations are not summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825 (1992).

### IV.

### SUMMARY JUDGMENT EVIDENCE

With this motion, Defendant hereby adopts and incorporates by reference the same as if fully set forth verbatim herein, the attached Exhibits A-F.

## V.

## ARGUMENT AND AUTHORITIES

The evidentiary framework for a *prima facie* case of discrimination under Title VII was established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." In order to establish a *prima facie* case of discrimination under *McDonnell Douglas* in a disparate treatment case, a plaintiff must show the she is: (1) a member of a protected class, (2) qualified for the position, (3) subject to an adverse employment action, and (4) treated differently from others similarly situated.

### A.   Plaintiff's religious discrimination claim fails as a matter of law – no disparate impact

The Plaintiff pleads in Paragraph 23 of her Original Complaint a "disparate and adverse impact" due to Plaintiff's religious observance, practice or belief. Disparate treatment claims based on religion are subject to the standard burden-shifting requirements of *McDonnell Douglas* described above.

While it is not disputed that Plaintiff is a member of a protected class, that Plaintiff's termination was an adverse employment action, and that she was arguably qualified for the position she held, Plaintiff has no evidence that any other similarly situated employee who was not in a protected class received more favorable treatment than she did. In fact, another supervisor in the Information Technology Department requested permission for her employees to attend church services on Sunday, July 3, 2011, but the request was denied the same as Plaintiff's request. (Ex. D, Materre Aff.).

### B.   Legitimate, non-discriminatory reason for termination

Even if Plaintiff could establish a *prima facie* case (and she cannot), Plaintiff's claim still must fail because Defendant legitimately terminated Plaintiff for failure to report to work on the Sunday of the July 4, 2011 holiday weekend during the move to the Justice Center. Plaintiff admits that in March or April 2011, she learned that the move to the Justice Center was scheduled for the first weekend in July, 2011. (Ex. A: Pl. Dep. at 59:23-60:3). Additionally, Plaintiff admits when she learned that the move to the Justice Center was scheduled for the July 4, 2011 weekend, she

"did not have a conflict" and she "knew about my church service that was going on" and would be present to work that weekend. (*Id.* at 66:13-18, 69:8-12). Yet Plaintiff waited 3-4 days before the move to tell her supervisor that she was unable to work on Sunday. (*Id.* at 70:7-13).

As the Desktop Support Supervisor, Plaintiff's role in the move to the Justice Center was to assist with the testing of the computers once they had been moved by the movers and make sure the computers had been set-up properly. (*Id.* at 55:15-24). Plaintiff admits she was responsible for approximately "2000 plus" computers, the move to the Justice Center, and had four subordinates to assist her with her portion of the move. (*Id.* at 120:7-22). As Desktop Support Supervisor, Plaintiff's role in the move was critical and in the opinion of her supervisor and the Director of the Information Technology Department, she could not be spared on Sunday. (Ex. E, Webb Aff.). Plaintiff displayed an enormous lack of professionalism and courtesy by informing her supervisor a mere few days before the move was to commence that she was unable to work on Sunday. (*Id.*)

Plaintiff has no evidence whatsoever that Defendant's legitimate, nondiscriminatory reason for her termination is a pretext.

### C.   Plaintiff fails to plead "failure to accommodate"

Although Plaintiff's case appears to based on a failure to accommodate a religious belief or practice, Plaintiff has wholly failed to plead such case in any manner, and as such, Defendant asserts that Plaintiff cannot prevail on such basis. *See Plaintiff's Original Complaint.* Furthermore, Plaintiff's time to amend her pleadings has long since lapsed. But even if Plaintiff could establish a *prima facie* case of failure to accommodate a religious belief or practice, accommodating Plaintiff's would have caused an undue hardship on Defendant.

The Plaintiff alleges that she experienced religious discrimination in violation of Title VII. To establish a *prima facie* case of religious discrimination under Title VII, Plaintiff must show that: (1) she had a bona fide religious belief or practice that conflicted with an employment requirement; (2) she informed her employer of that belief; and (3) she was discharged for failing to comply with the conflicting employment requirement. *Weber v. Roadway Express, Inc.,* 199 F.3d 270 (5th Cir. 2000). If a *prima facie* case is established by an employee, the burden shifts to the employer to show either (1) that it offered an alternative reasonable accommodation to resolve the conflict; or (2) that accommodating the employees religious beliefs or practice as requested would cause an

undue hardship. *Bruff v. North Mississippi Health Svcs.,* 244 F.3d 495, 499-500 (5th Cir. 2001).

### D. No religious belief or practice

While Plaintiff claims she missed work due to a bona fide religious practice, the EEOC defines a religious practice to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views. 29 C.F.R. § 1605.1. As such, the Defendant argues that Plaintiff's reason for not working on Sunday, July 3, 2011, as "breaking ground for a new church and feeding the community, 3000 plus people" is not a religious belief or practice. (Ex. A: Pl. Dep. at 81:6-13).

### E. Absent supervisor an undue hardship

Even if Plaintiff could establish a *prima facie* case, which Defendant asserts she cannot, Plaintiff's claim still fails because accommodating Plaintiff's religious beliefs as requested would cause undue hardship on the Defendant due to the complex and urgent nature of the move to the Justice Center. Plaintiff admits that the move to the Justice Center was a "big deal" and that the move was not a normal situation for the IT Department. (Ex. A: Pl. Dep. at 56:25-57:2, 76:22-77:6). Plaintiff argues that she secured her own replacement for her absence on Sunday, July 3, 2011, yet admits that it was not her responsibility to authorize someone else to work in her stead. (*Id.* at 77:7-17).

In *Trans World Airlines, Inv. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264 (1977), the Supreme Court found that an employer suffers undue hardship when required to be a greater than de miminus cost of imposition upon coworkers. Title VII's general policies and objectives are not required to discriminate against some employees in order enable other to observe the Sabbath. *Id.* at 85. Furthermore, in *Brenner v. Diagnostic Center Hospital,* 671 F.2d 141 (1982), the Fifth Circuit affirmed the District Court's ruling that having one pharmacist substitute for another pharmacist to accommodate a religious belief or practice resulted in "decreased efficiency, economic loss, and increased risk to patients."

The Fifth Circuit has similarly found that a religious accommodation that requires other employees to take on additional duties or change their schedules presents an undue hardship. *See, e.g., Bruff,* 244 F.3d at 501 (finding that accommodation would result in undue hardship because it would require other employees to assume a disproportionate workload); *Weber v. Roadway Express, Inc.,* 199 F.3d 270, 274 (5th Cir.2000) ("The mere possibility of an adverse impact on co-

workers ... is sufficient to constitute an undue hardship."); *Eversley v. MBank Dallas,* 843 F.2d 172, 176 (5th Cir.1988) (determining it would be an undue hardship on an employer to require employees to switch shifts). The Fifth Circuit has further noted that an employer need not actually incur costs before claiming that an accommodation would result in costs that are more than *de minimus. Bruff,* 244 F.3d at 501.

In this case, the Plaintiff's role as Desktop Support Supervisor during the holiday weekend move to the Justice Center was vital to the efficiency of the move, increased the risk that the computers would not be installed and functional when the Court system opened for business on Tuesday, July 5. 2011, and required other employees to take on additional duties or change their schedules, all of which provided an undue hardship on the Defendant. (Ex. E, Webb Aff.). Furthermore, the fact that the Plaintiff secured her own replacement for her duties on July 5, 2011 is irrelevant since it was not within the Plaintiff's authority to make changes to the schedule for the move, as Plaintiff admits in her deposition. (Ex. C: Pl. Dep. at 77:7-17).

For these reasons, Plaintiff's claims of religious discrimination must fail. The record clearly establishes that all employees of Defendant were treated the same with regarding to attending a church service on Sunday, July 3, 2011 and Plaintiff has produced no witnesses to the contrary. Since Plaintiff wholly failed to plead failure to accommodate a religious belief or practice, Plaintiff cannot prevail. However, even if Plaintiff had sufficiently plead failure to accommodate, the Defendant has provided evidence that the absence of a supervisor on Sunday, July 3, 2011, would have resulted in an undue hardship on the Defendant and would have required other employees to assume a disproportionate workload. (Ex. E, Webb Aff.).

  **F.**  **Plaintiff's retaliation claim fails as a matter of law**

Plaintiff applied for employment with Defendant, Fort Bend County, in 2007. In 2007, the Director of the Fort Bend County Information Technology Department was Charles Cook. Plaintiff knew Charles Cook when they both worked at BMC Software. (Ex. C: Pl. Dep. at 16:2-4, 17:7-24). Plaintiff listed Charles Cook as a reference on her employment application with Fort Bend County. (Ex. F, Pl. Emp. App.). Plaintiff was hired on or about December 17, 2007, as Desktop Support Supervisor. Plaintiff describes the working conditions at Fort Bend County as "fine" when she was first employed. (Ex. C: Pl. Dep. at 32:13-15).

In 2010, Plaintiff reported allegations of sexual harassment by Charles Cook to the Human Resources Department. Although the alleged harassment had allegedly taken place over several years, Plaintiff only reported the allegations to Human Resources in 2010. (Ex. C: Pl. Dep. at 35:11-36:5). Plaintiff was placed on paid leave during the investigation of her allegations against Charles Cook. (Ex. C: Pl. Dep. at 37:2-14). Charles Cook resigned his position at Fort Bend County in May 2011 and Plaintiff returned to work. (Ex. C: Pl. Dep. at 37:20-38:5). Plaintiff was satisfied with the way Defendant handled the allegations Plaintiff made against Charles Cook. (Ex. C: Pl. Dep. at 38:6-8).

Plaintiff's supervisor prior to and after her paid leave in May 2010 was Kenneth Ford. (Ex. C: Pl. Dep. at 41:2-7). Thomas R. Webb replaced Charles Cook as the Director of the Information Technology Department at Fort Bend County. (Ex. C: Pl. Dep. at 49:19-21). In the pleadings, Plaintiff makes sweeping allegations of demotion, reprimands, and pay docking, yet the record is wholly void of any such evidence.

Plaintiff's sole factual allegation in support of her claim of retaliation is that after she returned from FMLA leave in May 2010 and Charles Cook had resigned as Director of the Information Technology Department, she was terminated fourteen (14) months later for failing to report to work for the move to the Justice Center on Sunday, July 3, 2011. Furthermore, Plaintiff's allegation that her supervisor, Kenneth Ford, was friends with Charles Cook, and that her termination was in retaliation for Charles Cook's resignation is not supported by the record.

To establish a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in protected activity, (2) she was subjected to a materially adverse employment action, and (3) a causal link exists between the protected activity and the materially adverse employment action. *See Burlington Northern & Santa Fe Ry.Co. v. White,* 548 U.S. 53 (2006); *Septimus v. University of Houston,* 399 F.3d 601, 610 (5th Cir. 2005); *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004). If Plaintiff establishes a *prima facie* case of retaliation, and Defendant articulates a legitimate, nondiscriminatory reason for the adverse employment decision, Plaintiff must ultimately prove that "but for" her protected activity she would not have been subjected to the adverse employment decision. *Strong v. University Healthcare Systems, L.L.C.,* 482 F.3d 802, 806 (5th Cir. 2007).

> **G.     No causal link**

While it is not disputed that Plaintiff engaged in a protected activity of reporting allegations of harassment to the Human Resources Department in April 2010, and that Plaintiff was terminated from employment for failing to report to work fourteen (14) months later, Plaintiff cannot meet the third element of a *prima facie* case of retaliation.  Plaintiff cannot point to any evidence in the record that establishes a causal link between her protected activity fourteen (14) months prior and the adverse employment action.  Plaintiff was terminated for failing to report to work on the one Sunday that she and all other employees of the Information Technology Department were required to work.

Courts in this Circuit make clear that the timing between protected activity and adverse employment action must be "very close" to be sufficient evidence of causation to support a *prima facie* case.  *Strong v. Univ. Healthcare Sys.,* 482 F.3d 802, 808 (5th Cir. 2007) (quoting *Clark County Sch. Dist.,* 532 U.S. at 273).  Plaintiff's termination came more than fourteen (14) months after she reported allegations of harassment against Charles Cook, and some of the most recent Fifth Circuit decisions state that four months is not close enough to meet the "very close" requirements and cannot establish the causation required to support a retaliation claim.

Furthermore, there is absolutely no allegation that the Director of the Information Technology Department, Thomas R. Webb, who undisputedly made the decision to terminate Plaintiff for failing to report to work on Sunday, July 3, 2011, ever harassed Plaintiff.  Given the lack of a direct connection between the alleged harassment in this case and Plaintiff's termination, the only way Plaintiff can escape summary judgment is to raise a question of fact about whether Kenneth Ford impermissibly influenced Thomas R. Webb's decision to terminate the Plaintiff. *See Russell v. University of Tex. Permian Basin*, 2007 WL 1879157 at 6-7 (5th Cir. June 28, 2007) (unpublished op.) (granting summary judgment where there was insufficient evidence that the alleged harasser exercised influence over the decision makers). Plaintiff has no such evidence.

To the contrary, the undisputed evidence demonstrates that: (1) Plaintiff was terminated for failing to report to work on Sunday, July 3, 2011, during the move to the Justice Center and (2) Thomas R. Webb and not Kenneth Ford, made the decision to terminate Plaintiff.  (Ex. E, Webb Aff.).  When a decision maker independently determines the underlying reasons for a job decision, there is no fact issue regarding intent, and the decision maker does not inherit the "taint of

discriminatory intent." *Russell*, 2007 WL 1879157 at 6-7; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000); *Peter v.Harrah's New Orleans*, 418 F.Supp.2d 843, 850 (E.D. Louisiana 2006) (summary judgment for employer, no causal link between harasser and decision maker).

For all of the foregoing reasons, Plaintiff cannot establish a causal connection between any alleged retaliation by Kenneth Ford and Thomas R. Webb's decision to terminate Plaintiff and, as a result, Defendant entitled to summary judgment on the retaliation claim. *Rios v. Rossotti*, 252 F.3d 375, 379-80 (5th Cir. 2001) (objective reasons underlying decision made by decision maker). Furthermore, since the Defendant has provided a legitimate, non-retaliatory reason for its action, Plaintiff must ultimately prove that but for the protected activity, the employer would not have engaged in the adverse employment action. *Id.* at 380. In order to make a showing of pretext, the Plaintiff must be able to rebut each legitimate reason articulated by the employer. *Preston v. Texas Dep't of Family and Protective Servs.,* 222 F. App'x 353, 359-360 (5th Cir. 2007).

H. **Intentional infliction of emotional distress**

In the instant case, Plaintiff contends that the allegations set out in her pleadings constitutes intentional infliction of emotional distress. Absent legislative consent, political subdivisions of Texas generally have immunity from suit when they are performing governmental functions. *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). Hiring and firing of county employees is a governmental function. The Texas Tort Claims Act contains a limited waiver of governmental immunity; however, the Act does not waive immunity from intentional tort claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2). Intentional infliction of emotional distress is an intentional tort. *See Twyman v. Twyman,* 855 S.W.2d 619, 621-22 (Tex. 1993). Accordingly, governmental immunity bars Plaintiff's intentional infliction of emotional distress against Defendant, Fort Bend County. *See Univ. of Texas Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App. - Houston [1st Dist.] 1999, pet. dism'd w.o.j.); *Alcala v. Webb County*, 620 F. Supp.2d 795, 802 (S.D. Tex. 2009). Therefore, Plaintiff's claim should be dismissed with prejudice.

Furthermore, under Texas law, an intentional infliction of emotional distress claim is a gap-filler tort that is allowed when the plaintiff has no other recognized theory of redress. *Creditwatch, Inc. v. Jackson*, 157 S.W. 3d 814, 816 (Tex. 2005). It is not intended to supplant or duplicate existing statutory or common law remedies. *Id*. Additionally, Plaintiff has not asserted an intentional infliction of emotional distress claim against any named individual defendants since this claim is

based on the same underlying conduct as her religious discrimination or retaliation claim under Title VII. Consequently, the Court should dismiss Plaintiff's intentional infliction of emotional distress claim against Fort Bend County.

## VI.

## CONCLUSION

The Defendant is entitled to summary judgment as a matter of law because the Plaintiff has not established the essential elements of her claims and the Defendant has articulated its legitimate, non-discriminatory reasons for her termination.

Accordingly, for all of the foregoing reasons, Defendant, Fort Bend County, prays that summary judgment be granted, that the Plaintiff take nothing by her claims, that this cause of action be dismissed in its entirety, and for such other and further relief to which it may be entitled in law and equity.

Respectfully submitted,

By: *[signature: Mary E. Reveles]*

Mary E. Reveles
First Assistant County Attorney
SBN: 24007905
Federal ID No. 23788
301 Jackson, Suite 728
Richmond, Texas 77469
(281) 341-4555
(281) 341-4557 - Facsimile

ATTORNEY FOR FORT BEND COUNTY

## CERTIFICATE OF SERVICE

      I hereby certify (1) that the above instrument is being filed electronically, with confirmation to be received that the Electronic Court Filing ("ECF") system has registered such transaction, and with a listing of all attorneys who have received notice of electronic filing of the above instrument, and (2) that the above instrument is being sent by certified mail, return receipt requested, to all known counsel of record, or parties appearing *pro se*, <u>who are not listed as having received such notice of electronic filing of the above instrument</u>; and that both such actions are being done on this, the 29th day of January, 2013.

_____
Mary E. Reveles,
First Assistant County Attorney