IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOIS DAVIS, § | | |
| Plaintiff § | | |
| § | | |
| vs. § | CIVIL ACTION NO. 4:12-cv-00131 | |
| § | | |
| § | | |
| FORT BEND COUNTY, § | | |
| Defendant | | |

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the Court to deny Defendant's motion for summary-judgment.

A. Introduction

Plaintiff, Lois M. Davis filed suit against Fort Bend County, Texas for retaliation, wrongful termination based on religious discrimination under Title VII, as well as intentional infliction of emotional distress. The parties have engaged in written and oral discovery, with the discovery period ending on November 30, 2012. The dispositive motion deadline is January 31, 2013. Defendant's motion for summary-judgment ("motion") must be dismissed because there are issues of material fact that must be determined by a trier of facts.

B. Facts

Defendant filed a motion for summary-judgment on January 29, 2012. *See Defendant's Motion for Summary Judgment.* Defendant's entire motion is based on the contention that Plaintiff filed suit for being terminated for failing to report to work on Sunday, July 3, 2011. *id* at 2. However, Defendant informed the Texas Workforce Commission Civil Rights Division (TWCCD) that Plaintiff was terminated for failing to report to work on Sunday July 3, 2011 **and** Monday, July 4, 2011. (Ex: B, HR letter to TWCCD) Both statements are

incorrect and misleading.

Plaintiff did not show to work on Sunday for two reasons. First, Defendant informed Plaintiff her services were not needed; and second, Defendant intentionally without notice restricted Plaintiff's access to the building and to her email. (Ex. A: Pl. Dep. at 145:20 -149:9) (Ex: C, Letter restricting Plaintiff's Access)

Defendant also stated Plaintiff was informed in March or April, 2011, the physical move of the Fort Bend County Court's System to the Justice Center was scheduled for the July 4, 2011 holiday weekend.  Again, misleading.  Actually, Defendant informed all its employees in March 2011 the July 4, 2011 move was "not etched in stone." (Ex, A: Pl. Dep. at 130:25-131:7) (Ex: D, Novosad email)  The schedule "confirming" the date of the move was delivered to all employees (except Plaintiff) on June 17, 2011 by email. (Ex: E, Justice Center move email) (Ex: G, Mistry Affidavit) (Ex: H, Joseph Affidavit) (Ex: A: Pl. Dep. 132:12-22) Defendant intentionally excluded Plaintiff from that crucial email and its attachments. Again, Defendant presented different evidence to the TWCCD. Defendant submitted an affidavit to TWCCD stating the schedule was hand delivered to all employees. (Ex: F, Ford Affidavit).

Defendant had every intention to terminate Plaintiff because she filed a sexual harassment and retaliation charge against Defendant.  Plaintiff's termination from employment on religious discrimination was Defendant's final act of retaliation - a performance that began on May 21, 2011, starring Kenneth Ford.

## C. Summary of Argument

Plaintiff's lawsuit did not arise because she was terminated. *See Defendant's Motion for Summary-Judgment.*  Plaintiff's lawsuit was filed because Defendant retaliated against Plaintiff for filing a sexual harassment and retaliation complaint against Defendant. Plaintiff was terminated before the statutory 180 day right-to-sue notice was given by the TWCCD. (Ex: I, Complaint and right to sue) Plaintiff's termination from employment was just one of many acts of retaliation by Defendant.  *See Plaintiff's Original Complaint.*

D. Factual Background

Plaintiff was hired by Defendant on December 17, 2007 as a Desktop Support Supervisor. Plaintiff was hired with exempt employee status. Almost immediately, Plaintiff was sexually harassed by Defendant's Information Technology Director Charles Cook.  On or about November 15, 2009, Mr. Cook hired his friend Kenneth Ford as Plaintiff's supervisor. (Ex A: Pl. Dep. at 103:6-19)  Plaintiff and Mr. Ford had a great working relationship. (Ex A: Pl. Dep. at 102:11-23). Unfortunately, Mr. Cook inappropriately touched Plaintiff on December 15, 2009. (Ex A: Pl. Dep. at 96:18-25)   Plaintiff sought help to cope with the sexual advances, however the stress was more than she could handle.  Therefore, on April 1, 2010, Plaintiff met with Defendant's Human Resources department to formally file a sexual harassment complaint against Mr. Cook. Defendant's Human Resources department initiated an investigation and placed Plaintiff on Family Medical Leave Act (FMLA). (Ex: J, Sexual Harassment Investigation)  Mr. Ford was aware of the complaint filed against his friend Mr. Cook. Charles Cook resigned from his position out of fear of standing before the commissioners court.  On or about May 12, 2010, Plaintiff contacted Mr. Ford and Kathy Novosad of Human Resources and expressed her desire to return to work.   Nine days later, Mr. Ford began retaliating against Plaintiff for filing a complaint against his friend Mr. Cook.

For example, Kenneth disciplined Plaintiff for assignments not assigned to her. Mr. Ford began deducting time from Plaintiff's pay, which is a violation of exempt employee status. Plaintiff's staff and responsibilities were reduced without explanation. Plaintiff's security access was either limited or restricted. (Ex A: Pl. Dep. at 110:2-115:25). Plaintiff was removed from projects she researched, designed and managed.   Plaintiff was excluded from critical emails concerning the Justice Center Move. (Ex: E, Justice Center move email) As a result of this blatant act by Defendant, on February 16, 2011, Plaintiff filed a complaint with the TWCCD and EEOC for retaliation. (Ex: I, Complaint and right to sue)   After this second complaint, Defendant's retaliation increased leading up to and after Plaintiff was terminated. (Ex. A: Pl. Dep. at 114:17-25) (Ex: O, Kadiri Affidavit)

After Plaintiff was terminated, Defendant made every effort to mislead the TWCCD so

that Plaintiff would be denied unemployment benefits. (Ex. Q, TWCCD Final Decision)

E. Summary Judgment Standard

A nonmovant in a traditional summary-judgment proceeding is not required to produce summary-judgment evidence until after the movant establishes it is entitled to summary judgment as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). In deciding whether there is a disputed issue of material fact that precludes summary judgment, a court takes as true all evidence favorable to the nonmovant. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A court must view the evidence in the light most favorable to the nonmovant and must indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Limestone Prods.*, 71 S.W.3d at 311; *Nixon*, 690 S.W.2d at 549.

F. Argument & Authorities

**A. Retaliation**

Plaintiff filed amongst other claims retaliation by Defendant. Defendant cited *Burlington Northern & Santa Fe Ry. Co v. White*, 548 U.S. 53 (2006) as the legal authority for determining if retaliation occurred. Under *Burlington,* Plaintiff must show that she (1) was engaged in a protected activity, (2) she was subjected to a materially adverse employment action, and (3) a causal link exist between the protected activity and the materially adverse employment action.  Defendant conceded in its motion that Plaintiff in fact engaged in a protected activity and was terminated from employment for failing to report to work, thereby meeting the first two elements of *Burlington.*  However, Defendant contends Plaintiff has failed to meet the causal link element under *Burlington.*  Defendant argues Plaintiff did not meet the "timing" burden between the protected activity and the adverse employment action. *see Strong v. Univ. Healthcare Sys.,* 482. F.3d 802, 808 (5th Cir. 2007). Defendant claims the adverse employment action was fourteen (14) months later when Plaintiff was terminated, therefore too remote.

That is procedurally incorrect. Plaintiff filed a complaint for retaliation with TWCCD on February 16, 2011 for retaliation well before she was terminated in July 2011. Plaintiff's complaint to TWCCD was based on Defendant's adverse employment action that began nine (9) days after Plaintiff returned from FMLA in May 2010, not fourteen (14) months later.

Defendant also argues that the Director of Information Technology, Thomas R. Webb undisputedly made the decision to terminate Plaintiff for failing to report to work on Sunday, July 3, 2011. Defendant goes further to state to that the only way Plaintiff can escape summary-judgment is to raise a question of fact about whether Kenneth Ford impermissibly influenced Thomas R. Webb's decision to terminate the Plaintiff. *See Russell v. University of Tex. Permian Basin,* 2007 WL 1879157 at 6-7 (5th Circ. June 28, 2007) (unpublished op.) Defendant stated confidently that Plaintiff has no such evidence.

However, Mr. Ford's affidavit and Mr. Webb's affidavit and emails raises questions of fact about who was the ultimate decision maker. Mr. Ford stated in his affidavit he "closed the door" to speak with Plaintiff concerning Sunday's move. This creates a critical issue of material fact as to what was said during this meeting between Plaintiff and Mr. Ford. Moreover, there is a conflict in the sequence of events and accuracy of Mr. Webb's affidavit. (Ex: L, Ray Webb affidavit). Mr. Ford stated in his affidavit he gave Plaintiff an option to work part of the day that Friday **after** he talked to Mr. Webb. Conversely, Mr. Webb stated in his affidavit he informed Mr. Ford to deny Lois Davis' request to be excused from work on Sunday, July 3, 2011. Mr. Webb also stated Plaintiff did not call [Mr. Ford] to let him know that she was not able to work. This shows a lineage of direct communication and information between Mr. Ford and Mr. Webb that could **only** be provided by Mr. Ford.

The Supreme Court stated in *Staub v. Proctor Hospital,* 131 S. Ct. 1186 (U.S. 2011) if a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker. Defendant's entire motion is based on Plaintiff not showing for work on Sunday, July 3, 2011. Mr. Webb sole decision for terminating Plaintiff was because she did not show up for work. Mr. Webb

never questioned Ms. Davis as to what occurred in the "closed door" meeting between herself and Mr. Ford or why she failed to show for work.  Therefore, it is obvious any information regarding Plaintiff's absence was reported by Mr. Ford to Mr. Webb, thereby influencing his decision to terminate her.

Defendant's motion for summary judgment as to retaliation should be denied because Plaintiff raises a question of fact about whether Kenneth Ford impermissibly influenced Thomas R. Webb's decision to terminate Plaintiff.

### B. Religious Discrimination

Plaintiff filed a claim against defendant for religious discrimination.  In order to establish a *prima facie* case of religious discrimination, a plaintiff must show that the observance or practice conflicting with an employment requirement is religious in nature, that she called the religious observance or practice to her employer's attention, and that the religious observance or practice was the basis for her discharge or other discriminatory treatment. *EEOC v. Ilona of Hungary, Inc.* 108 F.3d 1569 (7th Cir.1997).  Title VII makes it unlawful to discharge or otherwise discriminate against an individual because of that individual's religion.  42 U.S.C § 2000e-2(a)(1).  Defendant argues that Plaintiff's request was not religious in nature nor for religious purposes.

However, the court in *EEOC* stated the finding on that issue [on what's religious or not] will depend on the assessment of the employee's credibility. *EEOC.* 108 F.3d 1569, 1571. Plaintiff stated in deposition she is an avid and active member of The Church without Walls. (Ex. A: Pl. Dep. at 135:22-136:19) Determining whether this is a religious activity is a matter of fact, not law.

### I. Undue Hardship and Reasonable Accommodations

Defendant argues that Plaintiff absences would have caused an undue hardship against Defendant. The Supreme Court has construed the term "undue hardship" in 42 U.S.C. § 2000e(j) to mean a cost to the employer that is anything more than de minimis. *Trans World*

*Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.CT. 2264 (1997) Defendant further argues that substitution of an employee would cause an undue hardship if it was required to substitute an employee on her behalf. *Brenner v. Diagnostic Center Hospital,* 671 F.2d 141 (1982).

However, the burden of making reasonable accommodations or showing that any accommodations would result in undue hardship lies with the employer. *Nottelson v. Smith Steel Workers,* 643 F.2d 335, 452 (7th Cir. 1981). In *Baz v. Walters,* 782 F.2d 701, 706 (7th Cir. 1986), the court stated that once a plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice **or** show that any accommodation would result in undue hardship. Once the employer has offered an alternative that reasonably accommodates the employee's religious needs, the employer need not also show other accommodations preferred by the employee. *Ansonia Bd. Ef Educ. v. Philbrook,* 479 U.S. 60, 68.

Mr. Ford stated in his affidavit in a "closed door" meeting that he made accommodations. However, Plaintiff contest that statement and argues the alternative. Plaintiff informed Mr. Ford she would be willing to show after church and work late as she always did. (Ex: F, Ford Affidavit), (Ex. A: Pl. Dep. at 143:21-144:5) Ironically, Defendant through its own exhibits admits to not accommodating its employees religious practices in any capacity. Margaret Materre stated in her affidavit:

> "Before the move to the Justice Center in July 2011, I met with Kenneth Ford and requested that certain employees who requested to attend church services be allowed to attend an early service on Sunday, July 3, 2011 while other employees worked and other employees going to a late service on Sunday, July 3, 2011. Kenneth Ford **denied** my request [without making accommodations] to allow employees the option to attend church services on Sunday, July 3, 2011." (Ex: M, Materre Affidavit)

Furthermore, Mr. Webb admitted without objection that Plaintiff's absence on July 4, 2011 had no impact on the design or planning of the IT conversion for the newly constructed Fort

Bend County Justice Center.  Plaintiff's absence on July 4, 2011, had a marginal impact on the implementation on the IT conversion at the newly constructed Fort Bend County Justice Center.  (Ex: N, Defendant's response to Interrogatories # 19) (Ex: P, Leveque Affidavit)

Defendant has failed to meet their burden of either showing they made reasonable accommodations or showing whether Plaintiff's absence would cause an undue hardship. Defendant has illustrated by admission a refusal to accommodate for religious practices and that Plaintiff's absence was not an undue burden. Therefore, Defendant's motion for summary judgment as to religious discrimination should be denied.

### C. Intentional affliction of emotional distress

Plaintiff concedes to Defendant's issue concerning intentional affliction of emotional distress. Plaintiff filed suit against a governmental entity who has the protection of sovereign immunity to intentional tort claims. *See Univ. of Texas Med. Branch v. Hohman,* 6 S.W.3d 767, 777 (Tex.App.-Houston 1999, pet. dism'd w.o.j.).  Therefore, Plaintiff  will dismiss its claim for intentional affliction of emotional distress and that claim only.

### G. Summary-Judgment Evidence

Plaintiff includes the summary-judgment evidence in an appendix filed with this response and incorporates the evidence into this response by reference and attached as Exhibits A-P

### H. Conclusion

The court should dismiss Defendant's motion for summary-judgment because there are material issue of fact that must be determined by a trier of fact.

### I. Prayer

For these reasons, plaintiff asks the Court to deny defendant's motion for summary judgment. If the Court grants defendant's motion for summary judgment, plaintiff asks the Court to overrule plaintiff's objections so they will be preserved for appeal.

Respectfully submitted,

THE LAW OFFICE OF DARRYL E. SCOTT, PLLC.

*Darryl E. Scott*

_____

DARRYL E. SCOTT
Attorney for Plaintiff
State Bar No.: 24075045
Southern District Bar No: : 1138469
3730 Kirby Drive, Suite 1200
Houston, Texas 77098
office: 713.534.7224
fax:    281.616.6245


s/Jessica R. Alexander/
Jessica R. Alexander,
Co-Counsel
Attorney for Plaintiff
State Bar No. 00993600
2218 Ruth
Houston, TX 77004
office: (832) 230-6818
Fax: (713) 659-2217

CERTIFICATE OF SERVICE

      I hereby certify that the above instrument PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT is being filed electronically, with confirmation to be received that the Electronic Court Filing ("ECF") system has registered such transaction, and with a listing of all attorneys who have received notice of electronic filing of the above instrument to all known counsel of record, or parties appearing pro se, who are not listed as having received such notice of electronic filing of the above instrument; and that both such actions are being done on this, the 18th day of February, 2013.

      Fort Bend County
      301 Jackson Street
      Richmond TX  77469
      sent via certified mail

                                                  _____
                                                  Darryl E. Scott