UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOIS M DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-131 |
| | § | |
| FORT BEND COUNTY, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment (Doc. 11) filed by Defendant Fort Bend County, Texas ("Defendant," or "Fort Bend County") against all claims made by Plaintiff Lois M. Davis ("Plaintiff," or "Davis"). Having considered the pleadings, the facts in the record, and the applicable law, the Court concludes that the motion should be granted.

## I.    Background

This is an action for discrimination, retaliation, and intentional infliction of emotional distress filed by Lois M. Davis against her former employer, Fort Bend County, Texas. (Compl. ¶¶ 21-26, Doc. 1). In support of her claims, Davis makes the following allegations:

Davis was hired by Defendant on or about December 17, 2007, to work as a Desktop Support Supervisor, (Doc. 1 ¶ 7), supervising up to about fifteen information technology ("IT") technicians, (Davis Dep. 107:15-25; Doc. 12-2). During Davis's initial employment, Defendant's IT Director was Charles Cook ("Cook"), (Doc. 1 ¶¶ 8, 12), and, in approximately November 2009, Cook hired his personal friend and fellow church member, Kenneth Ford ("Ford"), as Davis's supervisor, (Doc. 1 ¶ 9).

On or about April 1, 2010, Davis filed a complaint with Defendant's Human Resources Department, alleging that Cook had sexually harassed her beginning shortly after Davis's employment began and continuing for over two years. (Doc. 1 ¶¶ 10-11). Defendant conducted an investigation, placing Davis on paid Family Medical Leave Act (FMLA) leave during the pendency of the investigation. (Doc. 1 ¶ 11). The results of the investigation substantiated Davis's allegations against Cook, (Sexual Harassment Investigation at 2, Doc. 12-11), and, after a meeting with Defendant's management, including Ford, Cook resigned on or about April 22, 2010. (Doc. 1 ¶ 11). Davis alleges that as soon as she returned to work in May 2010, Ford began retaliating against her: demoting her and removing her from projects she managed; reprimanding her for errors she did not commit; impermissibly docking her pay, even though she was an exempt employee under the Fair Labor Standards Act (FLSA); and requiring her to perform tasks that similarly situated employees were not required to perform. (Doc. 1 ¶ 26). Consequently, on February 16, 2011, Davis filed a complaint with the Texas Workforce Commission Civil Rights Division (TWCCD) and the Equal Employment Opportunity Commission (EEOC), accusing Ford of both gender discrimination and retaliation for the earlier complaint of sexual harassment. (Charge of Discrimination, Doc. 12-10 at 2-4).

Meanwhile, over the following months, Defendant began preparing for the installation of personal computers, network components, and audiovisual equipment in the newly built Fort Bend County Justice Center. (Doc. 1 ¶ 16). All of Defendant's technical support employees were involved with the process, including Davis, whose role was to supervise and assist with testing the computers after they were installed to ensure that they had been set up properly. (Doc. 1 ¶ 16; Doc. 11 at 2). The move of the Fort Bend County Court System to the Justice Center was scheduled for the weekend of July 4, 2011, and all technical support employees, including Davis

and her team, were required to be present. (Doc. 1 ¶ 17). On or about June 28, 2011, however, Davis informed Ford that she would be unavailable to work the morning of Sunday, July 3, 2011, because of her commitment to participate in a church event. (Doc. 1 ¶ 18). Ford responded that if she were absent from work, she would be subject to disciplinary action, including termination. (Doc. 1 ¶ 18). Davis failed to report for work on July 3 and her employment was subsequently terminated. (Doc. 11 at 2).

## II.     Legal Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

A dispute is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party," *Id.* at 250; therefore, the court must not make determinations of credibility or weight and "must disregard all evidence favorable to the moving party that the jury is not required to believe," *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). A fact is material if, according to the substantive law

governing the claims, it is determinative of an element essential to the outcome of the case. *Anderson*, 477 U.S. at 248.

In this case, the substantive law governing the claims is Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. Claims under Title VII that are based on circumstantial evidence are analyzed under the three-step burden-shifting framework outlined by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Patrick v. Ridge*, 394 F.3d 311, 315 & n.10 (5th Cir. 2004). First, the plaintiff must establish a prima facie case according to the specific requirements of her particular claim. *Id.* at 315. If successful, the plaintiff creates a rebuttable presumption of unlawful activity. *Id.* In the second step, the defendant bears a burden of production, which it can meet only by "articulat[ing] a legitimate, nondiscriminatory [or nonretaliatory] reason" for its activity. *Id.* If the defendant meets its burden, then, in the third step, the plaintiff "must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination" or retaliation. *Id.*

## III.   Discussion

### A.   *Religious Discrimination*

Under Title VII, it is unlawful for an employer to discriminate against an employee on the basis of religion. 42 U.S.C. § 2000e-2(a)(1). In order to state a prima facie case of religious discrimination, a plaintiff must show that (i) she had a bona fide religious belief that conflicted with an employment requirement; (ii) she informed the employer of this belief; and (iii) she was discharged or disciplined for failing to comply with the conflicting employment requirement. *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000); *Turpen v. Mo.-Kan.-Tex. R.R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984). If the plaintiff establishes a prima facie case, then the

defendant must show either that it offered a reasonable accommodation or that such an accommodation would cause it undue hardship. *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 499 (5th Cir. 2001). "[U]ndue hardship exists, as a matter of law, when an employer incurs anything more than a *de minimis* cost to reasonably accommodate an employee's religious beliefs." *Id.* at 500 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)).

In this case, the claim for religious discrimination is based on the events of July 3, 2011. (*See* Doc. 1 ¶ 18; Doc. 12 at 6-8). Thus, in order to satisfy the first prong of a prima facie case, Davis must show that there was a religious practice or belief that conflicted with her work requirements on that day. "[R]eligious practices … include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1 (citing *United States v. Seeger*, 380 U.S. 163 (1965); *Welsh v. United States*, 398 U.S. 333 (1970)). For example, such practices include not working on the Sabbath, *Turpen*, 736 F.2d at 1024; objecting to military service, *Trans World Airlines*, 432 U.S. at 96 & n.13; and using peyote as a sacramental herb, *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1486 (10th Cir. 1989). Fort Bend County argues that Davis cannot establish a prima facie case because it was not her religious practices or beliefs that conflicted with her employment requirements; rather, her reason for not working was simply so that she could attend a "community service event," (Doc. 1 at 6): "breaking ground for a new church and feeding the community; 3,000 plus people." (Davis Dep. 81:10-11). Davis responds:

> [T]he finding on that issue [on what's religious or not] will depend on the assessment of the employee's credibility. Plaintiff stated in deposition she is an avid and active member of The Church without Walls. Determining whether this is a religious activity is a matter of fact, not law.

(Resp. at 6, Doc. 12). This, however, is a misstatement of the law, as being an avid and active member of a church does not elevate every activity associated with that church into a legally

protectable religious practice. Not only has Davis failed to even allege a religious belief that conflicted with her work, but, in her Complaint, she states unequivocally that her absence from work was due to personal commitment, not religious conviction:

> Plaintiff's Pastor *requested* that all members participate in this highly anticipated *community service event*. Plaintiff had specific duties assigned to her for this event. Plaintiff was in charge of the volunteer program that was responsible for feeding over three hundred (300) people.[1] Plaintiff's church depended on her to be there…. Mr. Ford intentionally placed her in a position whereby she had to choose between her religious commitment and her employment. Plaintiff chose her religious commitment.

(Doc. 1 at 6) (emphases added). In other words, the prospect of working on July 3, 2011, did not present a conflict between religious beliefs and employment requirements; it presented a conflict of time. This is insufficient to establish a prima facie case of religious discrimination.

Moreover, even if Davis could establish a prima facie case, she adduces no evidence contradicting Fort Bend County's "undue hardship" argument; specifically, that her absence, as a supervisor, would have decreased efficiency and required other employees to assume a disproportionate workload. *See Bruff*, 244 F.3d at 501 ("Requiring [coworkers] to assume a disproportionate workload … is an undue hardship as a matter of law."); *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982) (affirming district court's finding that accommodations resulting in "decreased efficiency, economic loss, and increased risk" constituted undue hardship). Ironically, Davis actually bolsters Fort Bend County's position by quoting the affidavit of a fellow supervisor:

> Before the move to the Justice Center in July 2011, I met with Kenneth Ford and requested that certain employees who requested to attend church services be allowed to attend an early service on Sunday, July 3, 2011 while other employees worked and other employees going to a late service on Sunday, July 3, 2011. Kenneth Ford denied my request [without making accommodations] to allow employees the option to attend church services on Sunday, July 3, 2011.

---

[1] Davis, at alternate times, states both 300 and 3,000 people. It is unclear from the record which figure is correct.

(Doc. 12 at 7) (quoting Materre Aff., Doc. 12-14). In other words, all such requests were denied because granting any particular one would have adversely affected other employees. Indeed, "[t]he mere possibility of an adverse impact on co-workers … is sufficient to constitute an undue hardship." *Weber*, 199 F.3d at 274 (citing *Trans World Airlines*, 432 U.S. at 81 (stating that affording an employee days off for religious observance at the expense of others who also desire those days off constitutes the type of "unequal treatment" that Title VII proscribes)). Here, rather than evidence of religious discrimination, there is evidence only of a neutral policy denying all requests for time off. Accordingly, Davis's claim fails as a matter of law.

### B.    Retaliation

In order to state a prima facie case of retaliation, a plaintiff must show that (i) she engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the plaintiff is successful in this first step of the *McDonnell Douglas* burden-shifting framework, and the defendant is successful in the second, then, in the third, the plaintiff can succeed only by "prov[ing] that the defendant's stated reason is pretextual and unworthy of credence." *Kirmer v. Goodyear Tire & Rubber Co.*, No. 12-30570, 2013 WL 4082885, at *5 (5th Cir. Aug. 14, 2013) (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)). To meet this burden, the plaintiff must prove that "but for the discriminatory purpose [s]he would not have been terminated." *Id.* (quoting *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005)).

Fort Bend County does not dispute that Davis engaged in a protected activity when she filed her sexual harassment complaint against Cook or her retaliation complaint against Ford, but does dispute the other two prongs of a prima facie case. Regarding adverse employment actions,

Fort Bend County argues that Davis's "sole factual allegation" is her termination, (Doc. 11 at 9), while Davis makes a wider range of claims, (Doc. 12 at 3). In the retaliation context, an adverse employment action is defined as one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (quoting *McCoy*, 492 F.3d at 559) (internal quotation marks omitted). It does not, however, include "petty slights, minor annoyances, [or a] lack of good manners." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted). In Davis's response, she cites competent summary judgment evidence supporting the following allegations: that, although her job title did not change, the number of technicians she supervised was reduced; that Ford, her supervisor, would schedule her technicians for other assignments without first discussing it with her; that Ford would snap his fingers and point at her technicians to get their attention; that Ford would send Davis multiple e-mails requesting the same information within minutes of each other; that she, unlike her peers, would have to meet with Ford for thirty minutes every day, (Doc. 12 at 3) (citing Davis Dep. 110:2-115:25); and that she was excluded from one important e-mail regarding the Justice Center move, (Doc. 12 at 3) (citing E-mail from Kenneth Ford to NetServices et al, (June 29, 2011 16:38 CST), Doc. 12-6). But even viewing this evidence in the light most favorable to Davis, it still does not satisfy the definition of "adverse employment actions." *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485-86 (5th Cir. 2008) (holding that supervisors' transferring an employee to a less desirable department; giving her an undesirable break schedule; and looking at her angrily, laughing at her, and talking negatively about her did not rise to the level of adverse employment actions). Thus, the only relevant employment action is Davis's termination, and her prima facie case depends on establishing a causal link between her protected activity and that termination.

Determining the existence of a causal link "is highly fact specific," *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994), and requires a calculation of all relevant factors, *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992). One significant factor is "the temporal proximity between the employee's conduct and termination." *Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010) (citing *Nowlin*, 33 F.3d at 508); *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995) ("The timing of the adverse employment action can be a significant, although not necessarily determinative, factor."). Absent other significant evidence of retaliation, the general rule is that a time period of over four months is too long to establish a causal link. *See, e.g.*, *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 260 (5th Cir. 2011) (collecting cases). In this case, the time period between Davis's most recent protected activity, filing her retaliation complaint on February 16, 2011, and the adverse employment action, her termination on July 6, 2011, is almost five months. Regarding that period, however, Davis does allege that "Defendant's retaliation increased leading up to and after Plaintiff was terminated." (Doc. 12 at 3). In support of this statement, Davis cites two sources of evidence: her deposition testimony that, in March 2011, after she filed her retaliation complaint, she was called into a meeting with Ray Webb and Kenneth Ford, during which Webb said, "What is it you want? We've got to get this taken care of," (Davis Dep. 114:17-25); and the affidavit of Davis's subordinate, Elisha Kadiri, who testifies that Ford displayed "acrimony, hatred, [and an] antagonistic and insipid attitude" toward Davis by, for example, ignoring her during meetings, while "endors[ing], support[ing], and acknowledg[ing]" another supervisor, (Kadiri Aff. at 1-2, Doc. 12-16). Although this is scant evidence of aggravating factors, viewing this evidence liberally and in the light most favorable to Davis, there is just enough for her case to plausibly bypass the four-month temporal proximity barrier.

The burden then shifts to Fort Bend County, which succeeds in articulating a legitimate, nonretaliatory reason for its termination decision: that Davis failed to report to work as required on Sunday, July 3, 2011. Finally, the burden shifts once more back to Davis to show that this putative legitimate, nonretaliatory reason was not the real reason for her termination, but was merely a pretext for retaliation. "To establish pretext, [a plaintiff] must show that [a defendant's] proffered explanation is false or unworthy of credence." *Waters v. City of Dall., Tex.*, No. 12-11127, 2013 WL 4406639, at *3 (5th Cir. Aug. 19, 2013) (quoting *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011)). Davis, however, completely neglects to argue this point. (*See* Doc. 12 at 4-6). Moreover, a review of the record serves only to bolster the legitimacy of Fort Bend County's position.

As early as March 23, 2011, Davis knew that there were three possible periods for the move, June 17-19, June 24-26, and July 1-4, and that the Fourth of July weekend was the most likely. (E-mail from Kenneth Ford to Michelle Cantone (March 23, 2011 11:14 CST), Doc. 12-5). The message communicating that information reads in part:

> Unfortunately it will not be a phased move[ ] but *a mass move for everyone*…. A[n] unfortunate matter is that *we need to schedule the staff vacation time around these dates, especially the July date*. I believe since it is a long weekend that is the move date that they will use.

(Doc. 12-5 at 1) (emphases added). Then, after March 23, she, along with other members of the information technology staff, had several meetings to discuss the move. (Davis Dep. 60:11-24). According to Davis, at that time, she did not have a time conflict with the proposed Fourth of July work schedule, (Davis Dep. 66:13-18); it was not until the Sunday prior to the move that she realized she could not work the morning of July 3, 2011, and on Monday or Tuesday, she asked Ford for that morning off, (Davis Dep. 70:7-13). "Mr. Ford told [her] on Friday between 3:00 and 3:30 that if [she] did not show up, that … there would be disciplinary action *up to and*

*including termination*." (Davis Dep. 81:14-21) (emphasis added). Davis, of course, did not show up; instead, viewing her dilemma as a choice "between her religious commitment and her employment[,] Plaintiff chose her religious commitment" and failed to report to work as required. (Doc. 1 at 6). As warned, she was subsequently terminated.

Although Davis succeeds in making a prima facie case, this showing is not enough, for "Title VII's protection against retaliation does not permit EEO complainants to disregard work rules or job requirements." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997). As Davis neglects even to argue against the legitimacy of Fort Bend County's reasoning for her termination, let alone adduce evidence in support of such an argument, she cannot meet her burden in the third *McDonnell Douglas* step, and her claim for retaliation must fail.

### C.   *Intentional Infliction of Emotional Distress*

In its motion, Fort Bend County argues that Davis's IIED claim fails as a matter of law because, "[a]bsent legislative consent, political subdivisions of Texas generally have immunity from suit when they are performing governmental functions." (Doc. 11 at 11) (citing *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007)). In response, Davis concedes that she "filed suit against a governmental entity who has the protection of sovereign immunity to intentional tort claims," (Doc. 12 at 8), and, therefore, does not oppose Fort Bend County's argument on this claim. Accordingly, Davis's IIED claim also fails as a matter of law. *See, e.g.*, *Sanders v. Unum Life Ins. Co. of Am.*, No. SA-06-CQA-514-FB, 2007 WL 2751892, at *7 & n.95 (W.D. Tex. June 21, 2007) (granting summary judgment against claims that plaintiff failed to pursue or defend beyond his initial complaint) (collecting cases), *aff'd*, 553 F.3d 922 (5th Cir. 2008).

### IV.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Fort Bend's Motion for Summary Judgment (Doc. 11) is **GRANTED** against all claims and Davis's case is **DISMISSED**.

SIGNED at Houston, Texas, this 11th day of September, 2013.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE