United States District Court
Southern District of Texas

**ENTERED**

August 25, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOIS M DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-131 |
| | § | |
| FORT BEND COUNTY, | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

Pending before the Court is Defendant's Motion to Dismiss (Document No. 42). Plaintiff filed a Response (Document No. 49), and Defendant filed a Reply (Document No. 53). Having considered these filings, the facts in the record, and the applicable law, the Court concludes Defendant's Motion (Document No. 42) should be granted.

**Background**

Plaintiff originally filed a complaint in 2012, which included claims of retaliation and religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17 ("Title VII"), and a claim of intentional infliction of emotional distress.[1] (Document No. 1). This Court granted Defendant's Motion for Summary Judgment (Document No. 13), which Plaintiff appealed to the Fifth Circuit. The Fifth Circuit affirmed the grant of summary judgment on Plaintiff's retaliation claim, but reversed the grant of summary judgment on Plaintiff's religious discrimination claim. (Document No. 27 at 17).[2] Therefore Plaintiff has filed

---

[1] This claim was not appealed to the Fifth Circuit, and has been abandoned.

[2] For thoroughness the Court also includes the factual and procedural background as summarized by the Fifth Circuit:

> Fort Bend hired Davis in December 2007 as a Desktop Support Supervisor responsible for supervising about fifteen information technology ("IT") technicians. Charles Cook ("Cook") was the IT Director at the time. In November 2009, he hired his personal friend and fellow church member, Kenneth Ford ("Ford"), as Davis's supervisor.
>
> On or about April 1, 2010, Davis filed a complaint with Fort Bend's Human Resources

an Amended Complaint against Defendant, alleging only religious discrimination. (Document No. 39). Plaintiff alleges that she "possessed a sincere religious belief that she was obligated to attend church, by her own personal view of her religious faith, on July 3, 2011." *Id.* at 9. Therefore she informed her supervisor, Ford, of this obligation, and told him that she could return to work immediately after the service. *Id.* Plaintiff also arranged for a replacement during her absence. *Id.* Although Ford initially approved her request, he later denied it and informed Plaintiff that "she would be subject to discipline" if she did not report to work first thing in the morning (despite allowing another employee time off to attend a parade). *Id.* When Plaintiff chose to attend church, she was immediately terminated, despite the fact that Fort Bend County had suffered no hardship as a result of her absence. *Id.* at 10.

---

Department, alleging that Cook subjected her to constant sexual harassment and assaults soon after her employment began. Fort Bend placed Davis on Family Medical Leave Act ("FMLA") leave during its investigation of her complaint. The investigation substantiated Davis's allegations against Cook and ultimately led to Cook's resignation on April 22, 2010.

According to Davis, Ford immediately began retaliating against her when she returned to work from FMLA leave. She alleged that Ford "effectively" demoted her by reducing the number of her direct reports from fifteen to four; removed her from projects she had previously managed; superseded her authority by giving orders and assigning different projects and tasks directly to Davis's staff; removed her administrative rights from the computer server; and assigned her tasks that similarly situated employees were not required to perform.

In March 2011, Fort Bend prepared to install personal computers, network components, and audiovisual equipment into its newly built Fort Bend County Justice Center. All technical support employees, including Davis, were involved in the process. As the Desktop Support Supervisor, Davis and her team were to "assist with the testing of the computers [and] make sure all of the computers had been set up properly." The installation was scheduled for the weekend of July 4, 2011, and all employees were required to be present.

On June 28, 2011, Davis informed Ford that she would not be available to work the morning of Sunday July 3, 2011, allegedly "due to a previous religious commitment." Davis testified that "[i]t was a special church service, and that I needed to be off that Sunday[,] ... but I would be more than willing to come in after church services." Davis also testified that she had arranged for a replacement during her *484 absence, as she had done in the past. Ford did not approve her absence, stating that it "would be grounds for a write-up or termination." After Davis attended her church event and did not report to work, Fort Bend terminated Davis's employment.

Davis filed suit against Fort Bend, alleging retaliation and religious discrimination under Title VII, and intentional infliction of emotional distress. The district court granted Fort Bend's motion for summary judgment on all claims and dismissed Davis's action. Davis timely appealed the district court's grant of summary judgment. On appeal, Davis challenges the grant of summary judgment on her Title VII claims, but not on her intentional infliction of emotional distress claim.

*Davis v. Fort Bend Cty.*, 765 F.3d 480, 483–84 (5th Cir. 2014), *cert. denied sub nom. Fort Bend Cty., Tex. v. Davis*, 135 S. Ct. 2804 (2015).

Defendant has filed a Motion to Dismiss Plaintiff's claim, arguing that "Plaintiff did not exhaust her administrative remedies relating to religious discrimination before filing suit." (Document No. 42 at 1). Plaintiff's original Charge of Discrimination filed with the Texas Workforce Commission ("TWC"), dated March 9, 2011, does not include religious discrimination. (Document No. 49-2 at 9). However, Plaintiff's intake questionnaire includes a handwritten addition of the word "religion" in the boxes labeled "Employment Harms or Actions." *Id*. at 17. The intake questionnaire was dated February 15, 2011, before the alleged religious discrimination. *Id*. Therefore Defendant notes that Plaintiff must have added "religion" to the intake questionnaire after its completion. (Document No. 42 at 2). Plaintiff explains this in her declaration, stating:

> I amended my TWC intake form to include the word "Religion" as well as marking the Employment Harms or Actions of Discharge and Reasonable Accommodation. These modifications were made to inform the TWC of the religious discrimination which occurred upon my termination. […] I presented the amended form to the TWC and the EEOC during late summer or fall of 2011, prior to November 2011.

(Document No. 49-2 at 2).

In an August 1, 2011 letter responding to the TWC's request for separation information, Defendant explained Plaintiff's termination for failing to report to work on July 3 and 4, 2011. *Id*. at 14. The relevant sections state:

> On June 28, 2011, two (2) days before the scheduled move, Ms Davis verbally notified her supervisor, Kenneth Ford, that she was not able to work on Sunday, July 3, 2011, because she had an all day church event to attend. Kenneth Ford informed Ms Davis that she was expected to work the entire weekend. Mr. Ford attempted to compromise with Ms Davis by allowing her the opportunity to go to church on Sunday morning and report to work after services. She rejected this offer. Mr. Ford informed her that if she did not report to work on Sunday, she would be subject to discipline up to and including termination. Ms Davis failed to report to work on Sunday, July 3, 2011. […] The decision was made to terminate Ms Davis for failure to report to work on Sunday and Monday July 3 and 4 as directed.

*Id*. On November 20, 2011, Plaintiff received a pre-determination letter from the TWC,

explaining that it had made a preliminary decision to dismiss the charge. *Id*. at 19. The letter explains that "it cannot be established that the employer has discriminated against you based on Sex, Retaliation, or any other reason prohibited by the laws we enforce." *Id*.  The letter mentions Plaintiff's "church commitments" briefly, but does not discuss her claims of religious discrimination. *Id*. at 20. Instead, the letter focuses largely on Fort Bend's response to the sexual harassment allegations, and details Plaintiff's termination for violation of policies (including her failure to come to work on July 3, 2011). *Id*. On November 17, 2011, Plaintiff received a "Dismissal and Notice of Right to File a Civil Action" from the TWC. *Id*. at 22. On December 15, 2011, Plaintiff received a "Notice of Right to Sue Within 90 Days" from the Department of Justice. *Id*. at 29.

**Parties' Motions**

Defendant's Motion to Dismiss argues that "Plaintiff did not exhaust her administrative remedies relating to religious discrimination before filing suit," because her Charge of Discrimination "does not include religion as a basis of discrimination." (Document No. 42 at 1). Defendant argues that Plaintiff's questionnaire was not sufficient to "satisfy her burden of having exhausted her administrative remedies," citing *Harris v. David McDavid Honda*, 213 Fed.Appx. 258 (5th Cir. 2006). *Id*. at 2. Defendant also takes issue with the questionnaire itself, arguing that it "was altered to include her religion claim after being completed and before being filed with this Court." *Id*. at 1-2. Although Defendant has not raised the argument that Plaintiff did not exhaust her administrative remedies previously, Defendant argues that it is an issue of subject matter jurisdiction, and therefore can be raised with the Court at any time. *Id*. at 3.

Plaintiff's Response first argues that the issue is not one of subject matter jurisdiction, and therefore Defendant waived its defense that Plaintiff did not exhaust her administrative

remedies. (Document No. 49 at 10). Plaintiff also argues that "Davis exhausted her administrative remedies by providing clear notice of her claims in an amendment to her TWC charge documents. The TWC and therefore the EEOC's own documents demonstrate that the relevant administrative agencies had notice of, and considered, Davis's amended claims." *Id*. at 10-11. In addition Plaintiff argues that "under controlling Fifth Circuit law, further acts of discrimination that occur after the filing of an initial charge of discrimination (such as the employee's ultimate termination) need not be raised in a new EEOC complaint;" that "Davis exhausted her administrative remedies because her lawsuit arose out of the investigation conducted by the EEOC/TWC;" and finally that "any failure to exhaust remedies is excused because, in these circumstances, exhaustion would have been futile." *Id*. at 11.

Defendant's Reply again argues that the failure to exhaust administrative remedies is jurisdictional, and also argues that Plaintiff's religious discrimination claim was not adjudicated or exhausted by the EEOC, and that "Fort Bend timely raised Plaintiff's non-exhaustion of remedies." (Document No. 53 at 3).

**Standard of Review**

*Exhaustion of Remedies*

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (citation omitted). "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation. Nevertheless, competing policies underlie judicial interpretation of the exhaustion requirement." *McClain v. Lufkin Indus., Inc.*, 519 F.3d

264, 273 (5th Cir. 2008) (citation omitted). "On the one hand, because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated *pro se*,[3] the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) (citations omitted). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* "With that balance in mind, this court interprets what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id*. This involves a "fact-intensive analysis" of the administrative charge, and looking "slightly beyond its four corners, to its substance rather than its label." *Id*.

*Failure to Exhaust as a Jurisdictional Issue*

The Court will first address whether a failure to exhaust administrative remedies is "merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction." *Id*. at 788 n. 7. The Court finds that this is a jurisdictional issue. As noted in *Mineta*, there is "disagreement in this circuit" regarding this issue, as "[n]either the Supreme Court nor this court sitting *en banc* has ruled that the *exhaustion* requirement is subject to waiver or estoppel, and our panels are in disagreement over that question." *Id*.[4] However, this Court recently explained that "[w]hat appears to be the most recent

---

[3] Notably, Plaintiff was not *pro se*; she listed her attorney on the original questionnaire. (Document No. 49-2 at 4).
[4] The cases cited for this proposition in *Mineta* are as follows:

> *Compare Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir.1990) ("[I]t is the well-settled law of this circuit that each [Title VII] requirement is a prerequisite to federal subject matter jurisdiction.") *and Porter v. Adams*, 639 F.2d 273, 276 (5th Cir.1981) ("The exhaustion requirement ... is an absolute prerequisite to suit") and *Randel v. Dep't. of U.S. Navy*, 157 F.3d 392, 395 (5th Cir.1998) ("If the claimant fails to comply with either of these [Title VII] requirements then the court is deprived of jurisdiction over the case.") *with Young v. City of Houston, Tex.*, 906 F.2d 177, 180 (5th Cir.1990) ("A failure of the EEOC prerequisite does not rob a court of jurisdiction.") *and Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 449 (5th

Fifth Circuit case addressing this issue [*Simmons-Myers v. Caesars Entertainment Corp.*] makes clear that the failure to administratively exhaust is viewed as a jurisdictional bar to suit." *Muoneke v. Prairie View A&M Univ.*, No. CV H-15-2212, 2016 WL 3017157, at *6 n.2 (S.D. Tex. May 26, 2016) (citing *Simmons-Myers v. Caesars Entm't Corp.*, 515 Fed.Appx. 269, 272 (5th Cir. 2013) ("[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies.") (per curiam) (citing *Nat'l Ass'n of Gov't Emps. v. City of Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994)). *Compare Yee v. Baldwin-Price*, 325 F. App'x 375, 378 (5th Cir. 2009) ("The exhaustion requirement is not jurisdictional, however, and is subject to the traditional equitable defenses of waiver, estoppel, and equitable tolling.") (per curiam) (citing *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992)). Both *Simmons-Myers* and *Yee* were designated as unpublished opinions by the Fifth Circuit, and are therefore not precedent, but may be viewed as persuasive. *Cantu v. Hidalgo Cty.*, 398 S.W.3d 824, 830 n. 2 (Tex. App.—Corpus Christi 2012, review denied). The Court agrees with the reasoning in *Muoneke* that *Simmons-Myers* is more persuasive, as it was decided most recently. 2016 WL 3017157, at *6 n. 2.[5]

Furthermore, *Muoneke* explains that "[t]he disagreement centers on whether the Supreme Court's decision in *Zipes*[6] [], which made clear that Title VII's limitations period for filing an EEOC charge was mandatory but nonjurisdictional, also applies to the administrative-exhaustion

---

Cir.1983) ("The basic two statutory requirements (although these are not necessarily 'jurisdictional') for a Title VII suit are....").
*Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006).
[5] Similarly, a 2014 case discussing the Rehabilitation Act noted that federal subject matter jurisdiction does not exist if administrative remedies are not exhausted. *Ruiz v. Donahoe*, 569 F. App'x 207, 211–12 (5th Cir. 2014) (per curiam), *reh'g denied*, 784 F.3d 247 (5th Cir. 2015) (citing *Tolbert*, 916 F.2d at 247-8) (Title VII's exhaustion requirement is a "prerequisite to federal subject matter jurisdiction.")). The Fifth Circuit has held that "the 1978 amendments to the Rehabilitation Act 1) established a private right of action, *subject to the same procedural constraints (administrative exhaustion, etc.)* set forth in Title VII of the Civil Rights Act …." *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981) (emphasis added).
[6] *Zipes v. Trans World Airlines*, Inc., 455 U.S. 385, 393 (1982).

requirement." *Id*. The Court believes that the finding in *Zipes* does not apply to the administrative-exhaustion requirement, because *Zipes* "relies heavily on legislative history and Supreme Court precedents that characterize the filing deadlines as statutes of limitations," reasoning which does not extend to the exhaustion requirement. *Mineta*, 448 F.3d at 788 n. 7 (citing *Henderson v. U.S. Veterans Admin.,* 790 F.2d 436, 440 (5th Cir. 1986) ("The filing deadlines are in the nature of statutes of limitations which are subject to waiver, estoppel, and equitable tolling.")). *Compare Zipes v. Trans World Airlines*, Inc., 455 U.S. 385, 393 (1982) (The legislative history states that the purpose of the filing provision is "preventing 'stale' claims, the end served by a statute of limitations.") (citation omitted), *with McClain*, 519 F.3d at 273 ("[T]he 'primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims.'") (citation omitted).

For these reasons, the Court finds that the exhaustion requirement is jurisdictional; therefore the Court will consider Defendant's Motion under Rule 12(b)(1). *Muoneke*, 2016 WL 3017157, at *6.[7]

*Standard of Review under FRCP 12(b)(1)*

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter jurisdiction exists, here the Plaintiff, must bear the burden of proof by a preponderance of the evidence for a 12(b)(1) motion. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In reviewing a motion under 12(b)(1) the court may consider

---

[7] Plaintiff's waiver arguments therefore become irrelevant, as "[c]hallenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).

(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

This motion is characterized as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011) (citations omitted). In a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id.* The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008) (citation omitted). "[W]hen a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).  In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit, has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson*, 2008 WL 4692392 at *10 (citations omitted).

**Discussion**

As discussed above, Plaintiff's Charge of Discrimination does not mention religious discrimination. (Document No. 49-2 at 9), but Plaintiff argues that her amendment to the TWC intake questionnaire was sufficient to exhaust her administrative remedies. (Document No. 49 at

17). The Court disagrees. As noted in *Harris v. Honda*, "an intake questionnaire does not constitute a charge." 213 F. App'x at 261.[8] *Harris* explained that the "primary difference between intake questionnaires and formal charges of discrimination is the notification requirement of a charge," and that "equating intake questionnaires to charges, without more, would be the equivalent of dispensing with the requirement to notify the perspective defendant." *Id*. (citing *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992)). Therefore the Court ruled that the plaintiff's intake questionnaire could not substitute for a proper charge, because the plaintiff failed to provide any evidence that defendant received notice of the plaintiff's claim. *Id*. at 262. *Compare Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) (unsigned form was sufficient to set "administrative machinery in motion" where defendant received notice and the EEOC actually investigated the plaintiff's allegations). Similarly, Plaintiff has provided no evidence that Defendant was aware of her amendment to the questionnaire, only stating that she "presented the amended form to the TWC and the EEOC,"[9] and generally referring to Fort Bend's letter to the TWC. (Document No. 49-2 at 2). Fort Bend's letter to the TWC does not demonstrate it had any awareness of Plaintiff's religious discrimination claim.[10] In the letter Defendant mentions Plaintiff's claim that she needed to attend church, but only in the context of explaining that she was terminated for failing to come to work. *Id*. at 14. There is no mention of Plaintiff's claim of religious discrimination; the letter largely functions as a response to allegations of retaliation, and does not appear to present a

---

[8] Although unpublished, the Court finds this opinion persuasive. *Cantu v. Hidalgo Cty.*, 398 S.W.3d 824, 830 n. 2 (Tex. App.—Corpus Christi 2012, reviewed denied).

[9] Furthermore, Plaintiff does not provide any evidence, other than her own statement, that this occurred. As discussed in greater detail below, there is no evidence that the EEOC considered her claim of religious discrimination, which it presumably would have done upon receipt of her updated form. Therefore the Court believes Plaintiff's claim is questionable at best. Even if true, however, the amendment to the intake questionnaire was not sufficient to exhaust her administrative remedies.

[10] The letter was dated August 1, 2011, while Plaintiff claims that she sent the amended form to the TWC "during late summer or fall of 2011, prior to November 2011." (Document No. 49-2 at 2, 14). Therefore, based on the dates alone, it is not clear that Defendant could have been aware of the amendment.

defense to religious discrimination claims. Without concrete evidence of this notice, it would not be appropriate to view the amended questionnaire as a charge. *Compare Price*, 687 F.2d at 78 (fact that employer received official notice of the charge was undisputed).

In addition, Plaintiff's amendment to the questionnaire was not under oath, and was factually unrelated to her original allegations of gender discrimination and retaliation in the charge. Courts have explained that "a charge must 'be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.' [42 U.S.C. § 2000e-5(b)]. The verification requirement is designed to protect an employer from the filing of frivolous claims." *Price*, 687 F.2d at 77 (citing *Weeks v. Southern Bell Telephone & Telegraph Co.*, 408 F.2d 228, 231 (5th Cir. 1969)). Also, Plaintiff's religious discrimination claims are not at all related to her claims of sex discrimination or retaliation, a factor the *Harris* Court, as well as this Court and the Northern District of Texas, have found relevant in determining whether to consider documents other than the charge. *Harris*, 213 F. App'x at 261-262 (noting that allegations in the intake questionnaire were not "like or related to the allegations within the charge"); *Kojin v. Barton Protective Servs.*, 339 F. Supp. 2d 923, 929 (S.D. Tex. 2004) (The Court dismissed plaintiff's age discrimination claims, partly because the claims were only mentioned in a questionnaire, and were "not a reasonable consequence of the facts [alleging discrimination based on national origin] set forth in the EEOC Charge of Discrimination."); *Hayes v. MBNA Tech., Inc.*, No. CIV.A.3:03-CV1766-D, 2004 WL 1283965, at *6 (N.D. Tex. June 9, 2004) ("Accordingly, the court holds that, when determining whether a claim has been exhausted, the decision is to be based on the four corners of the EEOC charge, but the court may also consult related documents, such as a plaintiff's affidavit, her response to the EEOC questionnaire, and attachments to the response, *when (1) the facts set out in the document are a*

*reasonable consequence of a claim set forth in the EEOC charge,* and (2) the employer had

actual knowledge of the contents of the document during the course of the EEOC investigation.")

(emphasis added). *Compare Wolf v. E. Texas Med. Ctr.*, 515 F. Supp. 2d 682, 688–89 (E.D. Tex.

2007) (allowing plaintiff's questionnaires to be construed as a timely charge, where the plaintiff

"later filed a Charge of Discrimination concerning the same factual allegations").

It is also notable that Plaintiff's only addition to her questionnaire was including the word

religion, and "marking the Employment Harms or Actions of Discharge and Reasonable

Accommodation." (Document No. 49-2 at 2). Plaintiff did not include any additional information

or explain her new claim whatsoever, despite the warning at the top of the questionnaire stating

that "you must provide complete information or your complaint may be dismissed." *Id.* at 4.

Several courts have explained that the most crucial elements of a charge of discrimination are the

factual statements therein; without adding any additional facts to her questionnaire, it is unclear

how the EEOC/TWC could have followed up on her new claims. *See Jaber v. Metro. Transit

Auth. of Harris Cty., Tex.*, No. 4:14-CV-201, 2014 WL 4102120, at *2 (S.D. Tex. Aug. 14, 2014)

("However, "[b]ecause factual statements are such a major element of a charge of discrimination,

[courts] will not construe the charge to include facts that were initially omitted.") (citations

omitted); *Vlasek v. Wal-Mart Stores, Inc.*, No. CIV.A. H-07-0386, 2007 WL 2402183, at *3

(S.D. Tex. Aug. 20, 2007) ("[T]he crucial element of a charge of discrimination is the factual

statement contained therein.") (citations omitted). *See also Price*, 687 F.2d at 78 ("We also take

into account the principal function of the administrative charge: the provision of an adequate

factual basis for the Commission's initiation of the investigatory and conciliatory procedures

contemplated by Title VII.").

Furthermore, there is no evidence that the EEOC investigated Plaintiff's claim of

religious discrimination. The only evidence cited by Plaintiff for her proposition that "the EEOC/TWC acknowledged, considered, and took into account Davis's claims of religious discrimination" is Fort Bend's letter to the TWC (discussed above), and the TWC's predetermination letter. (Document No. 49 at 18). The pre-determination letter contains no discussion of potential religious discrimination suffered by Plaintiff; it states that "it cannot be established that the employer has discriminated against you based on *Sex*, *Retaliation*, or any other reason prohibited by the laws we enforce." (Document No. 49-2 at 19) (emphasis added). The letter contains thorough discussion of Defendant's response to Plaintiff's sexual harassment allegations, but does not include any discussion of religious discrimination. *Id*. at 19-20.[11] Plaintiff's "church commitments" are only mentioned briefly, and as part of the letter's explanation that Plaintiff was fired for violation of policies, and not as retaliation for her sexual harassment complaint. *Id*. The "actual scope of the EEOC's investigation" is "clearly pertinent to an exhaustion inquiry," and in this case strongly suggests that Plaintiff has not exhausted her remedies regarding the religious discrimination claim. *McClain*, 519 F.3d at 274 (citations omitted).

Additionally, the Court does not believe that a religious discrimination investigation could reasonably have been expected to grow out of Plaintiff's original charge of discrimination, which only alleged retaliation and discrimination based on sex. *Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990) ("The scope of inquiry of a court hearing in a Title VII action

---

[11] For example, it does not include any discussion of Fort Bend's obligation "to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship," which would be highly relevant to a religious discrimination claim. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 75 (1977). Nor does it discuss elements of religious discrimination, such as the plaintiff's bona fide religious belief. *Hackney v. Texas Dep't of Criminal Justice*, No. CIV.A.1:07CV113TH, 2009 WL 2391232, at *6 (E.D. Tex. Aug. 4, 2009) ("To establish a prima facie case of religious discrimination under Title VII, [plaintiff] must prove that: (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) his employer was informed of that belief; and (3) he was disciplined for failing to comply with the conflicting employment requirement.") (citing *Jenkins v. Louisiana,* 874 F.2d 992, 995 (5th Cir.1989)).

is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (internal quotations and citation omitted). Religion and sex are obviously very different, and the EEOC could not have been expected to investigate religious discrimination based on Plaintiff's charge of gender discrimination. *See*, *e.g.*, *Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (charge alleging gender discrimination "did not necessarily encompass" race discrimination claim). In affirming dismissal of her retaliation claim, the Fifth Circuit explained that Plaintiff's religious discrimination claim was not related to her retaliation claim:

> Turning to her termination, there is no dispute that it was an adverse action. However, Davis does not present any evidence that Fort Bend's legitimate, non-retaliatory reason for terminating her—that she failed to report to work—was pretext for retaliation. Instead, she argues only that Fort Bend's reason for terminating her was pretext for its *religious discrimination.* This is irrelevant to her *retaliation* claim.

*Davis v. Fort Bend Cty.*, 765 F.3d 480, 491 (5th Cir. 2014), *cert. denied sub nom. Fort Bend Cty., Tex. v. Davis*, 135 S. Ct. 2804 (2015).

Plaintiff cites *Gupta v. East Texas State University* for the proposition that "a charging party need not file an amendment to her EEOC/TWC charge of discrimination every time an additional act covered by Title VII occurs." (Document No. 49 at 19) (citing 654 F.2d 411, 414 (5th Cir. 1981)). In *Gupta* the plaintiff had filed two complaints/charges with the EEOC: one alleging discrimination based on race, and a second alleging retaliation because of the first charge. 654 F.2d at 414. Once Gupta initiated his district court case, his contract was not renewed. *Id*. However, he never filed a third charge with the EEOC detailing this additional retaliation. *Id*. The Court found that a third charge was not necessary, explaining that "the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Id*. Plaintiff's case is different from *Gupta* for several

14 / 16

reasons. First, *Gupta* considered additional acts of *retaliation*, not discrimination. Plaintiff's retaliation claim has already been dismissed.[12] Second, Gupta's claim that he was fired due to his complaint clearly "grows out" of his second charge; it is another act of retaliation directly *related to* the second charge. As discussed above, Plaintiff's religious discrimination claim is completely different from her sex and retaliation claims, and therefore cannot "grow out" of her prior charge. *See also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 879 (5th Cir. 2003) ("Despite the important policy justifications for requiring employees to assert all of their claims in the original charge, we have identified one very narrow exception to this general rule. We have held that an amendment, even one that alleges a new theory of recovery, can relate back to the date of the original charge *when the facts supporting both the amendment and the original charge are essentially the same*.") (emphasis added).

Finally, Plaintiff argues that exhaustion would have been futile. However, Plaintiff cites no Fifth Circuit precedent for her futility argument. Furthermore, the only case Plaintiff cites applying this futility standard to Title VII also held that the exhaustion requirement at issue was merely prudential, not jurisdictional. *Wilson v. MVM, Inc.*, 475 F.3d 166, 174 (3d Cir. 2007). As discussed above, the exhaustion requirement is jurisdictional, and therefore cannot be excused by futility. *Id.*

**Conclusion**

For the reasons stated above, the Court finds that Plaintiff failed to exhaust her administrative remedies regarding her religious discrimination claim. Her alleged amendment to the questionnaire was insufficient because Plaintiff has not demonstrated that Defendant had

---

[12] Plaintiff argues in this section that, during the pendency of the EEOC investigation, she "was fired, in large part in retaliation for her previous Title VII complaints." (Document No. 49 at 20). First, as noted above, her retaliation claims have already failed; this argument is not relevant to her religious discrimination claim. Second, her argument that she was fired "in large part" for her prior complaints would appear to discredit her religious discrimination claims.

notice of the new claim, the form was not under oath, and the amendment was completely unrelated to her original claims. Furthermore, there is no evidence that the TWC/EEOC actually investigated her religious discrimination claim. Without the alleged amendment her religious discrimination claims do not reasonably grow out of the original charge.

Therefore, this Court does not have subject-matter jurisdiction over her claim, and her claim must be dismissed. Furthermore, re-pleading the claim for religious discrimination would be futile, as more than five years have passed since Plaintiff's termination. Therefore the dismissal will be with prejudice. *Jaber*, 2014 WL 4102120, at *4.

The Court hereby

ORDERS that Defendant's Motion to Dismiss (Document No. 42) is GRANTED and Plaintiff's claim of religious discrimination is DISMISSED with prejudice.

SIGNED at Houston, Texas, this 24th day of August, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE