(Slip Opinion)          OCTOBER TERM, 2018                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FORT BEND COUNTY, TEXAS *v.* DAVIS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 18–525.  Argued April 22, 2019—Decided June 3, 2019

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U. S. C. §2000e–2(a)(1). The Act instructs a complainant, before commencing a Title VII action in court, to file a charge with the Equal Employment Opportunity Commission (EEOC or Commission). §2000e–5(e)(1), (f)(1). On receipt of a charge, the EEOC is to notify the employer and investigate the allegations. §2000e–5(b). The Commission may "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of . . . conciliation." *Ibid.* The EEOC also has first option to "bring a civil action" against the employer in court. §2000e–5(f)(1). But the Commission has no authority itself to adjudicate discrimination complaints. If the EEOC chooses not to sue, and whether or not the EEOC otherwise acts on the charge, a complainant is entitled to a "right-to-sue" notice 180 days after the charge is filed. *Ibid.*; 29 CFR §1601.28. On receipt of the right-to-sue notice, the complainant may commence a civil action against her employer. §2000e–5(f)(1).

Respondent Lois M. Davis filed a charge against her employer, petitioner Fort Bend County. Davis alleged sexual harassment and retaliation for reporting the harassment. While her EEOC charge was pending, Fort Bend fired Davis because she failed to show up for work on a Sunday and went to a church event instead. Davis attempted to supplement her EEOC charge by handwriting "religion" on a form called an "intake questionnaire," but she did not amend the formal charge document. Upon receiving a right-to-sue letter, Davis commenced suit in Federal District Court, alleging discrimination on account of religion and retaliation for reporting sexual harassment.

After years of litigation, only the religion-based discrimination

Syllabus

claim remained in the case.  Fort Bend then asserted for the first
time that the District Court lacked jurisdiction to adjudicate Davis'
case because her EEOC charge did not state a religion-based discrim-
ination claim.  The District Court agreed and granted Fort Bend's
motion to dismiss Davis' suit.  On appeal from the dismissal, the
Court of Appeals for the Fifth Circuit reversed.  Title VII's charge-
filing requirement, the Court of Appeals held, is not jurisdictional;
instead, the requirement is a prudential prerequisite to suit, forfeited
in Davis' case because Fort Bend had waited too long to raise the ob-
jection.

*Held*: Title VII's charge-filing requirement is not jurisdictional.  Pp. 5–
11.

    (a) The word "jurisdictional" is generally reserved for prescriptions
delineating the classes of cases a court may entertain (subject-matter
jurisdiction) and the persons over whom the court may exercise adju-
dicatory authority (personal jurisdiction).  *Kontrick* v. *Ryan*, 540 U. S.
443, 455.  A claim-processing rule requiring parties to take certain
procedural steps in, or prior to, litigation, may be mandatory in the
sense that a court must enforce the rule if timely raised.  *Eberhart* v.
*United States*, 546 U. S. 12, 19.  But a mandatory rule of that sort,
unlike a prescription limiting the kinds of cases a court may adjudi-
cate, is ordinarily forfeited if not timely asserted.  *Id.*, at 15.  Pp. 5–9.

    (b) Title VII's charge-filing requirement is a nonjurisdictional
claim-processing rule.  The requirement is stated in provisions of
Title VII discrete from the statutory provisions empowering federal
courts to exercise jurisdiction over Title VII actions.  The charge-
filing instruction is kin to prescriptions the Court has ranked as non-
jurisdictional—for example, directions to raise objections in an agen-
cy rulemaking before asserting them in court, *EPA* v. *EME Homer
City Generation, L. P.*, 572 U. S. 489, 511–512, or to follow procedures
governing copyright registration before suing for infringement, *Reed
Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 157.  Pp. 9–11.

893 F. 3d 300, affirmed.

    GINSBURG, J., delivered the opinion for a unanimous Court.

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

—————

No. 18–525

—————

## FORT BEND COUNTY, TEXAS, PETITIONER *v.* LOIS M. DAVIS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 3, 2019]

JUSTICE GINSBURG delivered the opinion of the Court.

Title VII of the Civil Rights Act of 1964 proscribes discrimination in employment on the basis of race, color, religion, sex, or national origin. 78 Stat. 255, 42 U. S. C. §2000e–2(a)(1). The Act also prohibits retaliation against persons who assert rights under the statute. §2000e–3(a). As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission (EEOC or Commission). §2000e–5(e)(1), (f)(1). The question this case presents: Is Title VII's charge-filing precondition to suit a "jurisdictional" requirement that can be raised at any stage of a proceeding; or is it a procedural prescription mandatory if timely raised, but subject to forfeiture if tardily asserted? We hold that Title VII's charge-filing instruction is not jurisdictional, a term generally reserved to describe the classes of cases a court may entertain (subject-matter jurisdiction) or the persons over whom a court may exercise adjudicatory authority (personal jurisdiction). *Kontrick* v. *Ryan*, 540 U. S. 443, 455 (2004). Prerequisites to suit like Title VII's charge-filing instruc-

Opinion of the Court

tion are not of that character; they are properly ranked among the array of claim-processing rules that must be timely raised to come into play.

## I

Title VII directs that a "charge . . . shall be filed" with the EEOC "by or on behalf of a person claiming to be aggrieved" within 180 days "after the alleged unlawful employment practice occur[s]." 42 U. S. C. §2000e–5(b), (e)(1). For complaints concerning a practice occurring in a State or political subdivision that has a fair employment agency of its own empowered "to grant or seek relief," Title VII instructs the complainant to file her charge first with the state or local agency. §2000e–5(c). The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, "whichever is earlier," to file a charge with the EEOC. §2000e–5(e)(1). If the state or local agency has a "worksharing" agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other. See 29 CFR §1601.13 (2018); Brief for United States as *Amicus Curiae* 3.

When the EEOC receives a charge, in contrast to agencies like the National Labor Relations Board, 29 U. S. C. §160, and the Merit Systems Protection Board, 5 U. S. C. §1204, it does not "adjudicate [the] clai[m]," *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 44 (1974). Instead, Title VII calls for the following course. Upon receiving a charge, the EEOC notifies the employer and investigates the allegations. 42 U. S. C. §2000e–5(b). If the Commission finds "reasonable cause" to believe the charge is true, the Act instructs the Commission to "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."

Opinion of the Court

*Ibid.*  When informal methods do not resolve the charge, the EEOC has first option to "bring a civil action" against the employer in court.  §2000e–5(f)(1).  Where the discrimination charge is lodged against state or local government employers, the Attorney General is the federal authority empowered to commence suit.  *Ibid.*[1]

In the event that the EEOC determines there is "n[o] reasonable cause to believe that the charge is true," the Commission is to dismiss the charge and notify the complainant of his or her right to sue in court.  42 U. S. C. §2000e–5(b), f(1); 29 CFR §1601.28.  Whether or not the EEOC acts on the charge, a complainant is entitled to a "right-to-sue" notice 180 days after the charge is filed.  §2000e–5(f)(1); 29 CFR §1601.28.  And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer.  §2000e–5(f)(1).

## II

Respondent Lois M. Davis worked in information technology for petitioner Fort Bend County.  In 2010, she informed Fort Bend's human resources department that the director of information technology, Charles Cook, was sexually harassing her.  Following an investigation by Fort Bend, Cook resigned.  Davis' supervisor at Fort Bend, Kenneth Ford, was well acquainted with Cook.  After Cook resigned, Davis alleges, Ford began retaliating against her for reporting Cook's sexual harassment.  Ford did so, according to Davis, by, *inter alia*, curtailing her work responsibilities.

Seeking redress for the asserted harassment and retaliation, Davis submitted an "intake questionnaire" in Feb-

————————
[1] A different provision of Title VII, 42 U. S. C. §2000e–16, prohibits employment discrimination by the Federal Government and sets out procedures applicable to claims by federal employees.

Opinion of the Court

ruary 2011, followed by a charge in March 2011.[2]  While her EEOC charge was pending, Davis was told to report to work on an upcoming Sunday.  Davis informed her supervisor Ford that she had a commitment at church that Sunday, and she offered to arrange for another employee to replace her at work.  Ford responded that if Davis did not show up for the Sunday work, she would be subject to termination.  Davis went to church, not work, that Sunday.  Fort Bend thereupon fired her.

Attempting to supplement the allegations in her charge, Davis handwrote "religion" on the "Employment Harms or Actions" part of her intake questionnaire, and she checked boxes for "discharge" and "reasonable accommodation" on that form.  She made no change, however, in the formal charge document.  A few months later, the Department of Justice notified Davis of her right to sue.

In January 2012, Davis commenced a civil action in the United States District Court for the Southern District of Texas, alleging discrimination on account of religion and retaliation for reporting sexual harassment.[3]  The District Court granted Fort Bend's motion for summary judgment. *Davis* v. *Fort Bend County*, 2013 WL 5157191 (SD Tex., Sept. 11, 2013).  On appeal, the Court of Appeals for the Fifth Circuit affirmed as to Davis' retaliation claim, but reversed as to her religion-based discrimination claim. *Davis* v. *Fort Bend County*, 765 F. 3d 480 (2014).  Fort Bend filed a petition for certiorari, which this Court de-

———————

[2] Davis submitted these documents to the Texas Workforce Commission.  Complaints lodged with that commission are relayed to the EEOC, under a "worksharing" agreement between the two agencies. See How To Submit an Employment Discrimination Complaint, Texas Workforce Commission, https://twc.texas.gov/jobseekers/how-submit-employment-discrimination-complaint (as last visited May 30, 2019).

[3] Davis also alleged intentional infliction of emotional distress, but she did not appeal the District Court's grant of summary judgment to Fort Bend on that claim.

Opinion of the Court

nied. 576 U. S. ___ (2015).

When the case returned to the District Court on Davis' claim of discrimination on account of religion, Fort Bend moved to dismiss the complaint. Years into the litigation, Fort Bend asserted for the first time that the District Court lacked jurisdiction to adjudicate Davis' religion-based discrimination claim because she had not stated such a claim in her EEOC charge. Granting the motion, the District Court held that Davis had not satisfied the charge-filing requirement with respect to her claim of religion-based discrimination, and that the requirement qualified as "jurisdictional," which made it nonforfeitable. 2016 WL 4479527 (SD Tex., Aug. 24, 2016).

The Fifth Circuit reversed. 893 F. 3d 300 (2018). Title VII's charge-filing requirement, the Court of Appeals held, is not jurisdictional; instead, the requirement is a pruden-tial prerequisite to suit, forfeited in Davis' case because Fort Bend did not raise it until after "an entire round of appeals all the way to the Supreme Court." *Id.*, at 307–308.

We granted Fort Bend's petition for certiorari, 586 U. S. ___ (2019), to resolve a conflict among the Courts of Ap-peals over whether Title VII's charge-filing requirement is jurisdictional. Compare, *e.g.*, 893 F. 3d, at 306 (case be-low) (charge-filing requirement is nonjurisdictional), with, *e.g.*, *Jones* v. *Calvert Group, Ltd.*, 551 F. 3d 297, 300 (CA4 2009) (federal courts lack subject-matter jurisdiction when the charge-filing requirement is not satisfied).

## III

"Jurisdiction," the Court has observed, "is a word of many, too many, meanings." *Kontrick*, 540 U. S., at 454 (quoting *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 90 (1998)).[4] In recent years, the Court has un-

_____

[4]"Courts, including this Court, . . . have more than occasionally

Opinion of the Court

dertaken "[t]o ward off profligate use of the term." *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. 145, 153 (2013). As earlier noted, see *supra*, at 1, the word "jurisdictional" is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction). *Kontrick*, 540 U. S., at 455.

Congress may make other prescriptions jurisdictional by incorporating them into a jurisdictional provision, as Congress has done with the amount-in-controversy requirement for federal-court diversity jurisdiction. See 28 U. S. C. §1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between (1) citizens of different States . . . ."). In addition, the Court has stated it would treat a requirement as "jurisdictional" when "a long line of [Supreme] Cour[t] decisions left undisturbed by Congress" attached a jurisdictional label to the prescription. *Union Pacific R. Co.* v. *Locomotive Engineers*, 558 U. S. 67, 82 (2009) (citing *Bowles* v. *Russell*, 551 U. S. 205, 209–211 (2007)). See also *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 132 (2008).

Characterizing a rule as a limit on subject-matter jurisdiction "renders it unique in our adversarial system." *Auburn*, 568 U. S., at 153. Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the

---

[mis]used the term 'jurisdictional'" to refer to nonjurisdictional prescriptions. *Scarborough* v. *Principi*, 541 U. S. 401, 413 (2004) (quoting *Kontrick* v. *Ryan*, 540 U. S. 443, 454 (2004) (alterations in original)). Passing references to Title VII's charge-filing requirement as "jurisdictional" in prior Court opinions, see, *e.g.*, *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792, 798 (1973), display the terminology employed when the Court's use of "jurisdictional" was "less than meticulous," *Kontrick*, 540 U. S., at 454.

Opinion of the Court

defendant "at any point in the litigation," and courts must consider them *sua sponte*.  *Gonzalez* v. *Thaler*, 565 U. S. 134, 141 (2012).  "[H]arsh consequences" attend the jurisdictional brand.  *United States* v. *Kwai Fun Wong*, 575 U. S. 402, ___ (2015) (slip op., at 6).  "Tardy jurisdictional objections" occasion wasted court resources and "disturbingly disarm litigants."  *Auburn*, 568 U. S., at 153.

The Court has therefore stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times."  *Henderson* v. *Shinseki*, 562 U. S. 428, 435 (2011).  A claim-processing rule may be "mandatory" in the sense that a court must enforce the rule if a party "properly raise[s]" it.  *Eberhart* v. *United States*, 546 U. S. 12, 19 (2005) (*per curiam*).  But an objection based on a mandatory claim-processing rule may be forfeited "if the party asserting the rule waits too long to raise the point."  *Id.*, at 15 (quoting *Kontrick*, 540 U. S., at 456).[5]

The Court has characterized as nonjurisdictional an array of mandatory claim-processing rules and other preconditions to relief.  These include: the Copyright Act's requirement that parties register their copyrights (or receive a denial of registration from the Copyright Register) before commencing an infringement action, *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 157, 163–164 (2010); the Railway Labor Act's direction that, before arbitrating, parties to certain railroad labor disputes "attempt settlement 'in conference,'" *Union Pacific*, 558 U. S., at 82 (quoting 45 U. S. C. §152); the Clean Air Act's

---

[5]The Court has "reserved whether mandatory claim-processing rules may [ever] be subject to equitable exceptions."  *Hamer* v. *Neighborhood Housing Servs. of Chicago*, 583 U. S. ___, ___, n. 3 (2017) (slip op., at 3, n. 3).

Opinion of the Court

instruction that, to maintain an objection in court on certain issues, one must first raise the objection "with reasonable specificity" during agency rulemaking, *EPA* v. *EME Homer City Generation, L. P.*, 572 U. S. 489, 511–512 (2014) (quoting 42 U. S. C. §7607(d)(7)(B)); the Antiterrorism and Effective Death Penalty Act's requirement that a certificate of appealability "indicate [the] specific issue" warranting issuance of the certificate, *Gonzalez*, 565 U. S., at 137 (quoting 28 U. S. C. §2253(c)(3)); Title VII's limitation of covered "employer[s]" to those with 15 or more employees, *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 503–504 (2006) (quoting 42 U. S. C. §2000e(b)); Title VII's time limit for filing a charge with the EEOC, *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 393 (1982); and several other time prescriptions for procedural steps in judicial or agency forums.  See, *e.g.*, *Hamer* v. *Neighborhood Housing Servs. of Chicago*, 583 U. S. ___, ___ (2017) (slip op., at 1); *Musacchio* v. *United States*, 577 U. S. ___, ___ (2016) (slip op., at 8); *Kwai Fun Wong*, 575 U. S., at ___ (slip op., at 9); *Auburn*, 568 U. S., at 149; *Henderson*, 562 U. S., at 431; *Eberhart*, 546 U. S., at 13; *Scarborough* v. *Principi*, 541 U. S. 401, 414 (2004); *Kontrick*, 540 U. S., at 447.[6]

While not demanding that Congress "incant magic words" to render a prescription jurisdictional, *Auburn*, 568 U. S., at 153, the Court has clarified that it would "leave the ball in Congress' court": "If the Legislature clearly states that a [prescription] count[s] as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue[;] [b]ut when Congress does not rank a [prescription] as jurisdictional, courts should treat the restriction as nonjurisdictional in character."

────────────

[6] "If a time prescription governing the transfer of adjudicatory authority from one Article III court to another appears in a statute, the limitation [will rank as] jurisdictional; otherwise, the time specification fits within the claim-processing category."  *Hamer*, 583 U. S., at ___ (slip op., at 8) (citation omitted).

Opinion of the Court

*Arbaugh*, 546 U. S., at 515–516 (footnote and citation omitted).

## IV

Title VII's charge-filing requirement is not of jurisdictional cast. Federal courts exercise jurisdiction over Title VII actions pursuant to 28 U. S. C. §1331's grant of general federal-question jurisdiction, and Title VII's own jurisdictional provision, 42 U. S. C. §2000e–5(f)(3) (giving federal courts "jurisdiction [over] actions brought under this subchapter").[7] Separate provisions of Title VII, §2000e–5(e)(1) and (f)(1), contain the Act's charge-filing requirement. Those provisions "d[o] not speak to a court's authority," *EME Homer*, 572 U. S., at 512, or "refer in any way to the jurisdiction of the district courts," *Arbaugh*, 546 U. S., at 515 (quoting *Zipes*, 455 U. S., at 394).

Instead, Title VII's charge-filing provisions "speak to . . . a party's procedural obligations." *EME Homer*, 572 U. S., at 512. They require complainants to submit information to the EEOC and to wait a specified period before commencing a civil action. Like kindred provisions directing parties to raise objections in agency rulemaking, *id.*, at

---

[7] When Title VII was passed in 1964, 28 U. S. C. §1331's grant of general federal-question jurisdiction included an amount-in-controversy requirement. See §1331(a) (1964 ed.). To ensure that this "limitation would not impede an employment-discrimination complainant's access to a federal forum," *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 505 (2006), Congress enacted Title VII's jurisdiction-conferring provision, 42 U. S. C. §2000e–5(f)(3). See *Arbaugh*, 546 U. S., at 505–506. In 1980, Congress eliminated §1331's amount-in-controversy requirement. See Federal Question Jurisdictional Amendments Act of 1980, §2, 94 Stat. 2369. Since then, "Title VII's own jurisdictional provision, 42 U. S. C. §2000e–5(f)(3), has served simply to underscore Congress' intention to provide a federal forum for the adjudication of Title VII claims." *Arbaugh*, 546 U. S., at 506. Title VII also contains a separate jurisdictional provision, §2000e–6(b), giving federal courts jurisdiction over actions by the Federal Government to enjoin "pattern or practice" discrimination.

511–512; follow procedures governing copyright registra-
tion, *Reed Elsevier*, 559 U. S., at 157; or attempt settle-
ment, *Union Pacific*, 558 U. S., at 82, Title VII's charge-
filing requirement is a processing rule, albeit a mandatory
one, not a jurisdictional prescription delineating the adju-
dicatory authority of courts.[8]

Resisting this conclusion, Fort Bend points to statutory
schemes that channel certain claims to administrative
agency adjudication first, followed by judicial review in a
federal court. In *Elgin* v. *Department of Treasury*, 567
U. S. 1 (2012), for example, the Court held that claims
earmarked for initial adjudication by the Merit Systems
Protection Board, then review in the Court of Appeals for
the Federal Circuit, may not proceed instead in federal
district court. *Id.*, at 5–6, 8. See also *Thunder Basin Coal
Co.* v. *Reich*, 510 U. S. 200, 202–204 (1994) (no district
court jurisdiction over claims assigned in the first instance
to a mine safety commission, whose decisions are review-
able in a court of appeals). Nowhere do these cases, or
others cited by Fort Bend, address the issue here presented:
whether a precondition to suit is a mandatory claim-

———————

[8] Fort Bend argues that Title VII's charge-filing requirement is juris-
dictional because it is "textually linked" to Title VII's jurisdictional
provision. Brief for Petitioner 50. Title VII states in 42 U. S. C.
§2000e–5(f)(1) that "a civil action may be brought" after the charge-
filing procedures are followed. Section 2000e–5(f)(3) gives federal
courts jurisdiction over "actions brought under this subchapter," a
subchapter that includes §2000e–5(f)(1). Therefore, Fort Bend insists,
federal jurisdiction lies under §2000e–5(f)(3) only when a proper EEOC
charge is filed. But as just observed, see *supra*, at 9, the charge-filing
requirement is stated in provisions discrete from Title VII's conferral of
jurisdiction on federal courts. See *Sebelius* v. *Auburn Regional Medical
Center*, 568 U. S. 145, 155 (2013) (a requirement "does not become
jurisdictional simply because it is placed in a section of a statute that
also contains jurisdictional provisions"); *Gonzalez* v. *Thaler*, 565 U. S.
134, 145 (2012) (a nonjurisdictional provision does not metamorphose
into a jurisdictional limitation by cross-referencing a jurisdictional
provision).

Opinion of the Court

processing rule subject to forfeiture, or a jurisdictional prescription.

Fort Bend further maintains that "[t]he congressional purposes embodied in the Title VII scheme," notably, encouraging conciliation and affording the EEOC first option to bring suit, support jurisdictional characterization of the charge-filing requirement.  Brief for Petitioner 27.  But a prescription does not become jurisdictional whenever it "promotes important congressional objectives."  *Reed Elsevier*, 559 U. S., at 169, n. 9.  And recognizing that the charge-filing requirement is nonjurisdictional gives plaintiffs scant incentive to skirt the instruction.  Defendants, after all, have good reason promptly to raise an objection that may rid them of the lawsuit filed against them.  A Title VII complainant would be foolhardy consciously to take the risk that the employer would forgo a potentially dispositive defense.

In sum, a rule may be mandatory without being jurisdictional, and Title VII's charge-filing requirement fits that bill.

\*    \*    \*

For the reasons stated, the judgment of the Court of Appeals for the Fifth Circuit is

*Affirmed.*