IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOIS M. DAVIS | § | |
| | § | Case No. 4:12-CV-131 |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| FORT BEND COUNTY | § | |

**PLAINTIFF'S PETITION FOR FEES AND COSTS**

Plaintiff, Lois M. Davis, respectfully petitions for an award of $1,147,731.50 for her reasonable and necessary attorneys' fees and paralegal fees, and $56,333.34 for her costs and expenses—all of which were required for the successful pursuit of her claims in this case, as detailed in the attached declarations and exhibits.

The requested amounts of fees and costs are based on four components:

1.    An award of $1,011,940 for a total of 2,329.5 hours of attorney work and 166.7 hours of paralegal work by Wright, Close & Barger, LLP over the seven years of this litigation, from 2013 to the present. This work was billed—as explained in greater detail below—at prevailing market rates for similar services by similarly trained and experienced lawyers in the Houston, Texas area.

2.    An award of $34,541.50 for a total of 49.7 hours of attorney work by Ahmad, Zavitsanos, Anaikpakos, Alavi, & Mensing P.C. This work was billed—as explained in greater detail below—at a prevailing market rate for similar services by similarly trained and experienced lawyers in the Houston, Texas area.

3.    An enhancement of $101,250 for the 405 hours spent by Wright, Close & Barger, LLP's attorneys preparing briefs and arguments in the Supreme Court of the United States for the period from January to April of 2019.

4.    The costs and expenses Ms. Davis and her counsel has incurred and paid during the seven years of this case, which total $56,333.34.

## I.       Materials Attached to this Petition

In support of her application to this Court for her reasonable and necessary fees, expenses, and costs, Ms. Davis submits the following materials:

Exhibit 1      :         Declaration of R. Russell Hollenbeck

Exhibit 2      :         Declaration of Raffi Melkonian

Exhibit 3      :         Contemporaneous Billing Records of Wright, Close & Barger (2013 to present)

Exhibit 4      :         Declaration of Joseph Y. Ahmad

Exhibit 5      :         Declaration of Brian H. Fletcher

Exhibit 6      :         Declaration of Paul Hughes (from *National Venture Capital Ass'n v. Duke*, Cause No. 1:17-cv-01912-JEB)

Exhibit 7      :         Award of fees to Neal K. Katyal (from *Regeneron Pharms., Inc. v. Merus, N.V.*, Cause No. 14-cv-1650-KBF)

Ms. Davis also respectfully requests that this Court take judicial notice of the pleadings, exhibits, and other materials filed by the parties in this matter.

## II.      This case has a lengthy, and unique, trial and appellate history.

As the Court already knows, this is a unique Title VII litigation. Ms. Davis's victory required two appeals to the Fifth Circuit (each including successful efforts to defeat motions for panel and en banc rehearing), defeating one petition for writ of certiorari filed by elite Supreme Court practitioners, and even greater efforts (certiorari briefing, merits briefing, and argument) to prevail in the Supreme Court of the United States in 2019. The result, after years of litigation, was a unanimous victory in favor of Ms. Davis in the Supreme Court, followed by a jury trial and verdict entirely in Ms. Davis's favor. At every

stage, Ms. Davis was required to prevail—and did prevail—in order to advance and pursue her claims in this case. Under the Fifth Circuit's cases and Title VII, this hard-fought and resounding vindication of Ms. Davis's rights requires the highest level of compensation.

A short summary of the litigation history of this case tells the story. The total amount of hours billed by Wright, Close & Barger, LLP ("WCB") attorneys and other members of the Davis legal team are set forth below and in the attached exhibits and declarations. These numbers do not include deductions made by the undersigned counsel in an exercise of billing judgment. In total, more than 160 hours have been deducted from the WCB totals. In addition, as set forth in greater detail elsewhere, Ms. Davis does ***not*** seek to recover fees for the hundreds of hours devoted by the Stanford Law School team to this case, or for the time spent and tasks performed by her original counsel, Mr. Darryl Scott.

This case was filed on January 13, 2012 by predecessor counsel, Mr. Darryl Scott. Not long thereafter, the district court dismissed all of Ms. Davis's claims. With respect to the religious discrimination claims that were ultimately tried to this Court, those were dismissed because the previous judge concluded, as Fort Bend claimed, that her absence from work "was due to personal commitment, not religious conviction." (ECF Doc. 16, 17)

Ms. Davis then hired WCB, who pursued an appeal of the dismissal to the Fifth Circuit. WCB partners Raffi Melkonian (then an associate) and R. Russell Hollenbeck handled the appeal. A Fifth Circuit majority (2-1) agreed with Ms. Davis that the district court's decision was error and reversed. In total, WCB lawyers expended approximately 150 hours on this appeal, including researching and drafting the appellant's opening brief, researching and drafting the reply brief, and preparing and presenting oral argument.

Fort Bend sought rehearing en banc on the basis of the one-judge dissent from the Fifth Circuit. The Fifth Circuit requested a response, which the undersigned counsel prepared. Rehearing was ultimately denied without an en banc poll. WCB lawyers expended <u>approximately 35.5 hours</u> responding to and defeating the rehearing petition.

Fort Bend then retained Paul W. Hughes—at that time a partner at Mayer Brown LLP—to file a petition for certiorari in the Supreme Court. Mr. Hughes is a leading appellate and Supreme Court practitioner who is now "Co-Chair" of McDermott, Will & Emery LLP's "Supreme Court and Appellate Practice Group."[1] He has handled 25 merits cases in the Supreme Court and testified that his "normal hourly rate" (nearly two years ago) is $730 an hour. (*See* Exhibit 6) His hourly rate is undoubtedly higher now, although counsel has not found a more recent disclosure. The Supreme Court requested a brief in opposition to the petition. The undersigned counsel researched, prepared, and filed that brief. WCB lawyers expended <u>approximately 170 hours</u> responding to this petition for certiorari.[2]

The first Supreme Court petition was denied, and this case was remanded to the district court for trial. At the first status conference in front of Judge Frances Stacey after the petition was denied, Fort Bend suddenly announced—for the first time—that it intended to seek dismissal of Ms. Davis's claims based on a purportedly "inadequate" EEOC charge.

---

[1]  Mr. Hughes's biography appears at https://www.mwe.com/people/hughes-paul-w/.

[2]  This approximation and all other approximations hereafter are not exact. The total sum of all approximate time referenced in the subsequent paragraphs do not equal the full time expended by Ms. Davis's counsel. The approximate time summaries are to provide insight and breakdowns by category of the detailed contemporaneous billing time records that are attached as Exhibit 3. The detailed contemporaneous billing time records provide the most accurate information about the time for each task during phase of the case.

Counsel for Ms. Davis explained that any such argument had long been waived, and that the Supreme Court's controlling precedent clearly established that the EEOC charge requirement is non-jurisdictional. Ms. Davis was nonetheless required to submit an amended complaint so that Fort Bend could answer and assert its new defense.

Fort Bend ultimately filed another motion to dismiss. The parties extensively briefed the motion. WCB lawyers expended <u>approximately 50 hours</u> responding to this motion. During this same time period, the undersigned counsel proceeded with preparations for what was believed to be an imminent jury trial—including deposing Fort Bend employees, responding to discovery, preparing a joint pretrial order, and responding to (and defeating) motions to strike Ms. Davis's designated damages expert, Dr. Ron Luke. WCB therefore expended considerable time in this period (i.e., the spring of 2016) undertaking trial tasks.

The district court granted Fort Bend's motion to dismiss, and counsel for Ms. Davis was required to pursue another appeal to the Fifth Circuit—again necessitating researching and drafting an opening brief and a reply brief, as well as preparing for oral argument. Ms. Davis again prevailed. The Fifth Circuit unanimously held that the EEOC charge requirement is not jurisdictional and that Fort Bend had forfeited any such defense (precisely as Ms. Davis's counsel had explained to Fort Bend and argued to the previous district court judge). WCB lawyers expended <u>approximately 191 hours</u> on the opening brief—consistent with the fact that the briefing raised many novel issues of law that would eventually be litigated in the Supreme Court. WCB lawyers expended <u>approximately 72 hours</u> on the reply brief, and <u>approximately 60 hours</u> in preparing for oral argument. Fort

Bend again sought reconsideration, which was denied. The Fifth Circuit did not request a response to the Petition for Rehearing.

Fort Bend then hired Neal Kumar Katyal, whom many people consider to be the leading Supreme Court practitioner in the United States. Mr. Katyal bills at a rate of at least $1,750 an hour (again, based on disclosures he has made in 2018—presumably his rate is now higher still). (*See* Exhibit 7) The Supreme Court requested a response, which counsel for Ms. Davis prepared. This work required approximately 75 total hours of work by lawyers at WCB between the day the petition was filed (November 12, 2018) and the day Ms. Davis's brief in opposition was filed (December 19, 2018).

In addition, the undersigned lawyers were assisted in the proceedings before the Supreme Court by Mr. Jeffrey Fisher, Professor and Co-Director of the Stanford Law School Supreme Court Litigation Clinic, and by Mr. Brian Fletcher, Visiting Clinical Professor of Law at the same clinic. Professor Fisher is a preeminent Supreme Court advocate, *see* Fletcher Aff. ¶5-6, and he devoted approximately 80 hours of work to those tasks. Professor Fletcher is also a highly-qualified appellate lawyer, and is a former Clerk to Justice Ruth Bader Ginsburg, and devoted more than 120 hours of work to those tasks. *Id.* at ¶2-3, 7-10. Because the Stanford Clinic does not generally accept fees, Ms. Davis is *not* seeking recovery of fees for the considerable time and outstanding efforts of these attorneys (or the Clinic's students) who participated in and assisted with the proceedings before the Supreme Court.

The Supreme Court granted certiorari on January 11, 2019. This required the preparation of merits briefing and argument on a highly accelerated timetable, because the

case was also scheduled for arguments in April 2019. Ms. Davis's counsel, including the Stanford Law School Supreme Court clinic, worked feverishly to prepare responsive briefing. Moreover, Fort Bend organized an extensive amicus curiae campaign in order to defeat Ms. Davis, soliciting briefs from some of the most important repeat players in the Supreme Court—including the NAACP, the United States Chamber of Commerce, and national employment law advocacy groups.

WCB lawyers expended <u>approximately 170 hours</u> on the preparation of Ms. Davis's merits brief in the Supreme Court. This included efforts to counter Fort Bend's considerable amicus campaign. This work was in addition to the hours devoted by Professors Fisher and Fletcher to the brief. In addition, members of the Stanford Law School clinic devoted "several hundred hours researching, drafting, and otherwise working" on the case. *See* Fletcher Aff. ¶10. Had Ms. Davis sought recovery of those fees, the total additional amount would exceed $200,000, without taking into account the contributions of the clinic's student members. *See* Fletcher Aff. ¶8-10.

Because the interests of the United States were involved (the case involved interpretation and application of a federal statute, Title VII), the Solicitor General of the United States requested a meeting with Ms. Davis's counsel in order to decide which side to support in this case, if any. Mr. Melkonian and Mr. Hollenbeck prepared for and attending that meeting (with lawyers from the Office of the Solicitor General, the EEOC, and the United States Department of Labor) together with Brian Fletcher of the Stanford Law School litigation clinic. This meeting took place at the offices of the Justice Department, in Washington, D.C. Ms. Davis's team was successful in persuading the

United States to file a brief and argue the government's position supporting her legal arguments entirely. WCB lawyers spent approximately <u>40 total hours</u> in this effort, in addition to the hours expended by Professor Fletcher and his team. *See* Fletcher Aff. ¶7-8.

Mr. Melkonian was chosen to present oral argument in the Supreme Court. Consistent with common Supreme Court practice, he participated in several moot courts and conducted other extensive preparations. He was assisted in these tasks by Mr. Wright and Mr. Hollenbeck. WCB lawyers expended <u>approximately 225 hours</u> preparing for, presenting, and attending the Supreme Court arguments in this case.

Argument was heard by the Supreme Court on April 22, 2019, and the Court issued its decision on June 3, 2019. In an era where thorny legal questions often split the members of the Court into majority, concurring, and dissenting camps, the Court held 9-0 in favor of Ms. Davis in an extraordinary unanimous decision that received national attention. Notably, the Supreme Court echoed and confirmed without exception the legal arguments made by the undersigned counsel all along, and remanded the case for trial.

Counsel for Ms. Davis prepared for trial, joined by Joseph Y. Ahmad, a founding partner of the Houston law firm of Ahmad, Zavitsanos, Anaikpakos, Alavi, & Mensing P.C. ("AZA"). Mr. Ahmad is a well-known employment law litigator. This Court will recall the pretrial proceedings, as well as the jury trial held on Ms. Davis's claims beginning October 30, 2019 and concluding November 1, 2019. Ms. Davis prevailed in that trial in all respects. WCB lawyers expended <u>approximately 552 hours</u> in preparing for and conducting the trial. Mr. Ahmad joined the team for trial itself, and expended 49.7 hours.

In total, Ms. Davis's counsel expended more than 2400 hours litigating this case over seven years. We respectfully submit that all of those hours were properly spent. Nonetheless, as described below, counsel have voluntarily undertaken to reduce the billed hours by 160.30 hours, in an exercise of billing judgment, and have made certain other adjustments as detailed below.

### III.    The Plaintiff's legal team members are well-qualified.

Ms. Davis has throughout this case used a small and specially-chosen team to litigate her claims. This team consisted of Thomas C. Wright, R. Russell Hollenbeck, Raffi Melkonian, and Ronnie Flack of WCB, and Joseph Y. Ahmad of AZA. No other lawyers participated in this case (other than the team from the Stanford Law School Supreme Court clinic, whose fees are not sought). Each of these lawyers was chosen for skills that were directly relevant to this case.

 Mr. Melkonian is an experienced, 15-year appellate lawyer, with particular experience in the Fifth Circuit, and is a partner at WCB. He is a 2005 graduate of Harvard Law School; was a law clerk to the Honorable Jennifer Walker Elrod of the Fifth Circuit; practiced at the New York law firm of Cravath, Swaine & Moore, LLP and with the Solicitor General of New York before joining WCB. He has had primary responsibility for all appellate briefing and legal arguments in this case in this Court, in the Fifth Circuit (twice), and ultimately, the Supreme Court. Mr. Melkonian did not rely on a team of associates to write the briefs in this case, but rather undertook to do that work himself to ensure the most efficient presentation of Ms. Davis's case. (*See* Exhibit 2)

Mr. Hollenbeck is an extremely experienced 25-year trial and appellate lawyer, and a partner at WCB. He has briefed and argued dozens of appeals, appearing before the Supreme Court of Texas, the Texas intermediate appellate courts, the Fifth and Federal Circuit Courts of Appeals, and the Supreme Court of the United States. He has assisted in or handled all phases of litigation in a wide variety of matters, including products liability, catastrophic personal injury, intellectual property, insurance coverage, employment discrimination, and commercial lawsuits. Before joining the firm, Russ served on an intermediate appellate court assisting its justices in preparing opinions in complex civil appeals and original proceedings. Russ is Board Certified in Civil Appellate Law by the Texas Board of Legal Specialization, and has earned selection to Thomson Reuters' list of *Texas Super Lawyers®* (2008 to present) in Appellate and Civil Litigation. (*See* Exhibit 1)

Thomas C. Wright, a founding partner of WCB, is a 40-year lawyer with extensive trial and appellate experience in business cases, including oil and gas, breach of contract, and fiduciary litigation for plaintiffs and defendants. He has significant involvement in complex litigation and appeals. Mr. Wright has argued and briefed cases in the Texas Supreme Court, the United States Courts of Appeals for the Fifth and Ninth Circuits, and nearly all of the fourteen intermediate appellate courts in Texas. Tom is dual Board Certified in Civil Trial Law and Civil Appellate Law by the Texas Board of Legal Specialization. He is also a member of the prestigious American Law Institute. (*Id.*)

Joseph Y. Ahmad, is a 30-year lawyer and founding partner in the Houston law firm of Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C. He regularly handles complex litigation and has been recognized nationally as one of the best lawyers in his field. He

represents executives in a variety of matters, including breach of contract, trade secrets, covenants not to compete, breach of fiduciary duty, and other matters. He was elected to the prestigious American Board of Trial Advocates, an elite group of the country's leading judges and civil trial lawyers. He has been selected by his peers as one of the "*Best Lawyers in America*" since 2003 and he was named a "2015 Lawyer of the Year" in the Houston area. Mr. Ahmad has been recognized as a leading lawyer in "*Chambers USA*: America's Leading Lawyers for Business." He has been named to the *Texas Super Lawyers* list since 2003, been on the *Texas Super Lawyers Top 100 in Houston* since 2006, and been in the *Texas Super Lawyers Top 100 in Texas* every year but one since 2006. He was also named a *Benchmark Litigation* Star in 2016-2020. Mr. Ahmad received the 2019 Distinguished Member Award from the South Asian Bar Association of Houston. Having tried more than 50 cases to a verdict, and argued more than a dozen cases on appeal, he is a nationally recognized expert and frequent lecturer on a variety of law topics for organizations such as the American Bar Association, State Bar of Texas, The University of Texas School of Law, and the University of Houston Law Foundation. He has been a frequent commentator on legal issues for various media entities, including *The Wall Street Journal*, *The New York Times*, *Houston Chronicle*, and local television stations. His more recent engagements include representing: a general counsel sued for trade secret theft, an owner of an accounting practice who signed a covenant not to compete and employment agreement with the buyer of his practice, and a group of physicians with senior administrative roles within their medical center to represent them in a breach-of-contract

dispute. His hourly rate of $695 is customary for an attorney with his unique skills, years of complex litigation experience, and expertise in this area of law. (*See* Exhibit 4)

Ronnie Flack is a 5-year lawyer and an associate at Wright, Close & Barger LLP. Ronnie's practice focuses on civil litigation and appeals. Prior to joining the firm as an associate, Ronnie worked as a law clerk and legal assistant while attending law school, supporting our litigation teams in several serious personal injury and wrongful death cases, arbitrations, and complex commercial matters. Ronnie has worked on a variety of cases in all phases of litigation in state and federal court. (*See* Exhibit 1)

## IV.   Prevailing Title VII plaintiffs may recover reasonable attorney's fees.

As the Court is aware, a reasonable attorney's fee is due to prevailing plaintiffs in cases brought under Title VII. *See* 42 U.S.C. §2000e-5(k). The lodestar amount may be adjusted up or down to ensure that the award is reasonable. *See La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 328 (5th Cir.1995); *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993); *Shipes v. Trinity Indus.,* 987 F.2d 311, 320 (5th Cir.1993).

When deciding whether and to what extent to depart from the lodestar amount, courts consider the twelve *Johnson* factors. They include:

1. the time and labor required to represent the client(s);

2. the novelty and difficulty of the issues in the case;

3. the skill requisite to properly perform the legal services;

4. preclusion of other employment by the attorney due to acceptance of the case;

5. the customary fee charged for those services in the relevant community;

6. whether the fee is fixed or contingent;

7.  the time limitations imposed by the client or circumstances;

8.  the amount involved and the results obtained;

9.  the experience, reputation, and ability of the attorney(s);

10. the undesirability of the case;

11. the nature and length of the professional relationship with the client; and

12. awards in similar cases.

*See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The most important factor is the "degree of success obtained." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003) (citing *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir.1998)).

The first step in computing the lodestar is determining a reasonable hourly rate. "'[R]easonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.' "*McClain v. Lufkin Indus.*, 649 F.3d 374, 381 (5th Cir.2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 104 (1984)). "The prevailing market rates for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate." *Villegas v. Regions Bank*, H:11–cv–904, 2013 WL 76719, at *3 (S.D. Tex. Jan. 4, 2013) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir.2002)). "When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is prima facie reasonable." *Kellstrom*, 50 F.3d, at 328. "Determination of the reasonable hourly rate for a particular community is generally established through affidavits of other attorneys

practicing there." *Chisholm v. Hood*, 90 Fed. App'x. 709, 710 (5th Cir. 2004); *see also Watkins v. Input/Output, Inc.*, 531 F.Supp.2d 777, 784 (S.D. Tex. 2007) ("The evidence to support a hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits.").

## V.    The "lodestar" calculation here.

As noted above, the lodestar calculation consists of setting forth a reasonable rate and multiplying it by the reasonable hours expended on the case. To take the rate first, the hourly rates sought by Ms. Davis's counsel at WCB (e.g., $115 per hour for paralegals, $250 per hour and $350 per hour for associates, and $500 per hour for partners) as well as the hourly rate of $695 for Mr. Ahmad are all well-within the reasonable ranges for similarly skilled and experienced lawyers and paralegals in the Houston market. These matters are discussed further and explained in depth in the attached declarations and exhibits.

In terms of precedent, there is no question that $500 per hour (or more) for seasoned senior partners like those who represent Ms. Davis has been previously approved in this kind of litigation and similar litigation in this district. *See, e.g., Rebollar v. Ortega Medical Clinic, P.L.L.C.*, No. 4:18-0846, 2019 WL 3975454 (S.D. Tex. 2019) (approving rate of $500 an hour); *Novick v. Shipcom Wireless, Inc.*, 2018 WL 6079348, *3 (S.D. Tex. 2018) (approving hourly rates of $450 and $500 in FLSA case); *Rouse v. Target Corporation*, 181 F. Supp. 3d 379, 385 (S.D. Tex. 2016) (approving hourly rate of $500); *Jane Roe/Rachel V. Rose v. BCE Tech. Corp.*, 2014 WL 1322979, at *3 (S.D. Tex. 2014); *In re Wells Fargo and Hour Employment Practices Litigation*, No. 4:11-md-2266 (approving

hourly rate of $550 in FLSA case); *Whitnew Bank v. Hancock*, 2013 WL 1404822, at *3-4 (S.D. Tex. 2013) (approving hourly rates of $450 and $475 *in 2013*).

In terms of hours, this case involved a massive investment of hours by Ms. Davis's counsel. Much of that was unavoidable, and indeed it was imposed on her counsel by Fort Bend's litigation strategy to pursue multiple motions to dismiss her claims, followed by multiple appeals at every level over seven years of litigation. Nonetheless, as set forth in the attached declarations and exhibits, Ms. Davis's legal team—while making every effort to operate efficiently and with as little redundancy or duplication of effort—has exercised its billing judgment to reduce the number of attorney and paralegal hours for which she seeks recovery of fees.

## VI.    An upward adjustment of the "lodestar" is permitted under *Johnson*.

The eleven *Johnson* factors all tip decisively in favor of the fee award sought, and in fact, strongly favor an enhancement of fees in Ms. Davis's favor. Specifically, Ms. Davis seeks an enhancement of 50% of the hourly rate charged for the time spent by her counsel pertaining to the proceedings in the Supreme Court—which totals approximately 405 hours from January to April of 2019—so as to reflect the degree of difficulty in accomplishing what was a landmark, unanimous victory, while operating under an extremely difficult "time crunch." In other words, the fees for this work should be calculated at an enhanced hourly rate of $750.

(1)    *The time and labor required*. It goes without saying that the time and labor required to successfully pursue Ms. Davis's claims in this case were extreme. The case took seven years of consistent effort to litigate. In addition to a jury trial, it required

multiple appeals and, of course, a trip to the Supreme Court. Even more important, all of this effort was caused not by Ms. Davis, but was required by Fort Bend's recalcitrant litigation position in the face of its indefensible conduct. In particular, its insistence that the EEOC charge requirement was jurisdictional in the face of nearly unanimous circuit precedent saying otherwise was the cause of several years' of additional delay and hundreds of additional hours of legal work. To be sure, Fort Bend had a right to make those arguments. But having resoundingly—and unanimously—lost them at every level, Fort Bend must pay the consequences and costs of taking those risks with its money and with Ms. Davis's counsel's time.

(2)     *The novelty and difficulty of the questions*. This case required not only two appeals to the Fifth Circuit (on different legal grounds each time), but also a trip to the Supreme Court. By definition, the case involved novel and difficult questions of law. Indeed, it is difficult to imagine a case of this sort that could have presented more difficult or novel issues. If this factor is graded on a spectrum, this case sits entirely at one end.

(3)     *The skill requisite to perform the legal services properly*. This case required the highest trial and appellate skill levels. Not only were the legal questions difficult and novel, and the odds long, but Fort Bend's decision to hire the leading Supreme Court practitioners in the United States (twice) required high levels of skill on the part of Ms. Davis's counsel in order to defeat those efforts and prevail. Faced with two dismissals, two Fifth Circuit appeals, a Supreme Court appeal, and then a jury trial, Ms. Davis's counsel were required to prevail at every single stage of this case to pursue her claims. Had they failed at even one stage in this proceeding, she would have obtained no recovery at all.

(4)     *The preclusion of other employment by the attorney due to acceptance of the case*. This case occupied a great amount of the undersigned counsel's time, and particularly the time of Mr. Melkonian and Mr. Hollenbeck, over seven years. In all of those years, Messrs. Melkonian and Hollenbeck could have used the time devoted to this case on other hourly billable work—instead of on this contingent fee matter. Wright, Close & Barger LLP is a leading (primarily defense-side) appellate and trial law firm and has no shortage of hourly billable work to occupy the time of its attorneys. Instead, Ms. Davis's counsel dedicated the time necessary to handle her case and do all the work necessary "the right way" in order to achieve a favorable result for her.

(5)     *The customary fee*. As set forth in the attached declarations, the fees sought in this case are well-within the customary range for the extremely sophisticated work done in this case. These fees are not based on rates from other or different jurisdictions, *see, e.g., Van Ooteghem v. Gray*, 774 F.2d 1332, 1338 (5th Cir. 1985), but rather, are the fees WCB and AZA charge other clients in this market.

(6)     *Whether the fee is fixed or contingent*. The fee in this case was contingent, and Ms. Davis's lawyers took extremely significant risks in litigating this matter. As described above, when Ms. Davis's current counsel joined the case, her case, and all of her claims, had been *dismissed* in full. In addition, Ms. Davis's counsel was required to stand their ground over many years of litigation, to withstand multiple appeals and Supreme Court petitions, and to ultimately prevail at trial. Finally, rather than settle her claims for less than what they were worth, Ms. Davis decided to proceed to trial to vindicate her rights

despite the inherent risks of trial. This kind of risky, ground-breaking case is where the contingent fee factor should weigh most heavily.

(7) *Time limitations*. This is not a highly relevant factor here, other than at one particular stage. The case took many years to litigate. Nonetheless, Ms. Davis does point out that Fort Bend's petition for writ of certiorari was granted in January 2019 and then set for argument in April. That timespan was an unusually accelerated time schedule for a Supreme Court case, and required dedicated efforts on counsel's behalf both to prepare the necessary merits briefing, solicit amicus participation, meet with the Office of the Solicitor General, prepare and participate in several mock arguments, and then prepare for and present argument to the Supreme Court. Although there is a "strong presumption" that a lodestar represents a reasonable fee, the Fifth Circuit has held that "extraordinary circumstances" may warrant an increase in the lodestar. *See Combs v. City of Huntington*, 829 F.3d 388, 393 (5th Cir. 2016). With respect to the proceedings in the Supreme Court in the time period from January through April of 2019, this case presents just such a rare and exceptional circumstance.

(8) *The amount involved and the results obtained*. The results here are extraordinary given the situation. Ms. Davis prevailed in all respects, including by setting a nationwide precedent that will benefit others in her circumstances. Ms. Davis's Supreme Court case alone has already been cited 400 times, as reported by WESTLAW. Her first appeal in the Fifth Circuit has also been cited more than 400 times in both cases and secondary sources, largely for the proposition that sincerely held religious beliefs qualify for Title VII protection even if some observers would not view aspects of a practice as

religious in nature. *See Davis v. Fort Bend County*, 765 F.3d 480 (5th Cir. 2014) (see "citing references" in Westlaw). In addition, Ms. Davis was awarded nearly half a million dollars in compensatory damages by this Court. As far as counsel can tell, this judgment is the largest single-plaintiff discrimination award under Title VII in Texas after trial in the past five years. This result is remarkable, *especially* in the absence of any award of punitive damages (which are not available under Title VII in claims against a county). *Cf. Hernandez v. Chipotle Mexican Grill, Inc.*, 257 F. Supp. 3d 100 (D. D.C. 2017) (jury award of $50,000 in compensatory damages and $500,000 in punitive damages). As the Fifth Circuit has confirmed, excellent results—like those obtained here—should usually result at least in a "fully compensatory" lodestar fee. *Combs*, 829 F.3d at 393 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1993 (1983).

(9)     *The experience, reputation, and ability of the attorneys*. The lawyers involved in this case on Ms. Davis's behalf have a high level of all of these attributes, for the reasons set forth above and in the attached declarations. (*See* Exhbits 1, 2, 4, and 5)

(10)     *The "undesirability" of the case*. Ms. Davis's attorneys took this case *after* she had lost and had a judgment entered against her. It is very rare to take on a contingent fee case that requires an appeal just to be able to go to trial. This case, in fact, took two such appeals – four if one counts the Supreme Court briefing separately – before Ms. Davis's claims could be presented to a jury. At the outset, it was an "undesirable" case that counsel nonetheless undertook; and on which counsel refused to give up even when it was later dismissed again. This is not a case where Ms. Davis's counsel parachuted in at the last minute to reap the benefits of a certain victory.

(11)   *The nature and length of the professional relationship with the client*. The undersigned counsel have proudly and steadfastly represented Ms. Davis for over 7 years, despite lengthy trial and appellate process and the many delays caused by Fort Bend's litigation positions. The length of the professional relationship and the number of lawyers from WCB who handled this matter highlight the undersigned counsel's efficient but effective staffing on this case—and the prevention of duplicative attorney time—even in the face of Fort Bend's hiring of several leading Supreme Court practitioners. The Petition seeks fees for a handful of WCB attorneys and 1 paralegal who together handled seven years' worth of briefing, appeals, and ultimately, trial (with the assistance of 1 AZA attorney) to prevail on behalf of Ms. Davis.

(12)   *Awards in similar cases*. There are not many similar cases either in scope or difficulty. The authorities cited above set out that similar hourly rates have been approved in analogous litigation by courts in this district. With regard to the subject matter, a close analog is the award of fees made by the district court in *Hernandez v. Chipotle Mexican Grill, Inc.*, 257 F. Supp. 3d 100 (D. D.C. 2017) a recent Title VII pregnancy discrimination case filed in Washington D.C. In that case, the district court awarded the plaintiff her attorneys' fees totaling $825,000 in a case where the plaintiff recovered $50,000 in compensatory damages (and an additional $500,000 in punitive damages). *Id*. at 103. Crucially, that case required much less time to complete than this one, although the attorneys' time also totaled nearly 2,000 hours. *Id*. at 104-05. Specifically, that entire litigation was completed within two and one-half years. There was no appeal until after the final judgment (much less two appeals), and the appeal was dismissed by the plaintiff's

employer. *See Hernandez v. Chipotle Mexican Grill, Inc.*, 2017 WL 5258351 (D.C. Cir. 2017). There was no Supreme Court litigation (not even a petition for certiorari). And the plaintiff's claims were never dismissed by the district court (much less dismissed twice). Comparing *Chipotle* to this case demonstrates the reasonable nature of the award of attorneys' fees sought here.

Finally, although it is not specifically denominated as a factor, one cannot leave this discussion without noting that Fort Bend bought and paid for this fight—at every step of the way. They began by refusing any reasonable accommodation for Ms. Davis to attend church on a Sunday and participate in the groundbreaking of a new sanctuary and feeding of the community, and then had the audacity to claim that none of it was a "religious practice." They convinced the former judge over this matter of that position and got the case dismissed. After that decision was reversed, they hired expensive Supreme Court practitioners to seek relief, unsuccessfully. After the first remand, and five years into the litigation, they argued that "religion" was not properly checked on the EEOC claim form. Obviously, Fort Bend knew this was a religious accommodation case, given that they had argued the first time around that going to church was not a religious practice. When they lost again in the Fifth Circuit, they again hired the most expensive lawyers in the country to seek review in the United States Supreme Court (whether he chose to charge Fort Bend any fee is irrelevant, because his work increased the work required of Ms. Davis's counsel). Fort Bend rounded up the "usual suspects" of amici to try and convince the Supreme Court that the pillars of justice would crumble and fall if the Fifth Circuit's decision were not reversed. That further added to the work of the undersigned. After the unanimous decision

21

from the Supreme Court, rather than make any reasonable effort to resolve the case, Fort Bend pushed forward to trial and tried to convince the jury that Ms. Davis was not telling the truth about her sincere religious beliefs, even bringing the self-claimed "Michelangelo" of the Fort Bend Justice Center to explain why requiring Ms. Davis's presence for a few hours on a Sunday was imperative despite the fact that Fort Bend sent the other IT personnel home early on Saturday and Sunday, and did not need anyone on Monday, July 4. The Justice Center opened without a hitch as scheduled—on Tuesday July 5.

Finally, the Court asked the parties to confer on fees in an effort to resolve them. Fort Bend notified the undersigned on Friday, February 7 that it would present an offer on Monday, February 10. We are still waiting to hear any such offer from the county. Its silence tells us all we need to know.

## VII.   Ms. Davis's litigation costs are also recoverable.

The Fifth Circuit "has interpreted the 'attorney's fee' allowed by [Title VII] to include 'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services,' such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs." *See Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001).

This case involved substantial costs, all of which are recoverable. The total costs, including all expenses and advances (which include expert fees, mediations, travel, trial technology, and depositions) amount to more than $56,000 as detailed on the attached bill of fees and costs. (*See* Exhibit 3) This total amount includes, among other things, the following necessary and reasonable expenses.

- A mediation fee paid in May 2016 (after the first remand) to the Bergman ADR Group of $1,900, as well as a mediation fee paid in October 2019 to the Levin law group of $2,145;

- $1,100 for filing fees in the two appeals that were made necessary by Fort Bend's actions;

- Many thousands of dollars counsel was forced to expend for travel to New Orleans (for the first Fifth Circuit oral argument), California (for consultations with Supreme Court co-counsel), Washington, D.C. (for a required meeting with the Office of the Solicitor General of the United States and for the oral argument in the United States Supreme Court);

- Approximately $13,000 for the expert testimony of retained economist Dr. Ron Luke and his assistants (coded as expenses to Research and Planning Consultants, LLC); and

- Approximately $3,400 in costs for depositions of Fort Bend employees in preparation for trial, including court reporter and service of process fees, as well as subpoena fees for trial.

All of these expenses are reasonable and necessary, and should be granted.

## VIII.   An award of contingent appellate fees may be necessary.

Given Fort Bend's litigation strategy in this case thus far, it is entirely possible that it may choose to appeal this Court's final judgment, as well as any award of fees to Ms. Davis. Thus, Ms. Davis may be required to incur further attorneys' fees and costs in the defense of any final award. It is difficult to estimate, at this time, what a third appeal to the Fifth Circuit would costs in this case. Accordingly, Ms. Davis requests that this Court exercise its discretion in making an award of such fees as it would deem appropriate for such an appeal, based on its experience and knowledge of the issues potentially preserved at trial which Fort Bend might raise on appeal, and based on the amounts of fees incurred for the several previous appeals in this case, as reflected in the attached exhibits.

In the alternative, if the Court would prefer, Ms. Davis respectfully requests the opportunity to submit limited additional briefing in support of such an award after any further appeal in this matter, in the event that she is successful.

## IX.    Conclusion

Based on the foregoing, Plaintiff respectfully requests that this Court enter an order awarding her a total of $1,147,731.50 for her reasonable and necessary attorney's fees and $56,333.34 for her reasonable and necessary costs and expenses, plus post-judgment interest at the prevailing federal rate on such an award.

Respectfully submitted,

WRIGHT CLOSE & BARGER, LLP

By: */s/ Russ Hollenbeck*
Thomas C. Wright
Texas State Bar No. 22059400
Federal ID No. 2729
R. Russell Hollenbeck
Texas State Bar No. 00790901
Federal ID No. 21321
Raffi Melkonian
Texas State Bar No. 24090587
Federal ID No. 2338805
One Riverway, Suite 2200
Houston, Texas  77056
713.572.4321
713.572.4320 (fax)
wright@wrightclosebarger.com
hollenbeck@wrightclosebarger.com
melkonian@wrightclosebarger.com

AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C.

By: */s/ Joseph Ahmad*
Joseph Y. Ahmad
Texas State Bar No. 00941100
Federal ID No. 11604
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101 Telephone
(713) 655-0062 Facsimile
joeahmad@azalaw.com

**ATTORNEYS FOR PLAINTIFF,
LOIS DAVIS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2020 a true and correct copy of the above and foregoing document was served on the following counsel of record by electronic service through the state provided EFSP Efile.txcourts.gov and/or via facsimile:

Kevin Hedges
Assistant County Attorney
301 Jackson Street (Mail)
401 Jackson Street (Office)
Richmond, Texas 77469
Telephone:  (281) 341-4555
Facsimile:  (281) 341-4557

*/s/ Russ Hollenbeck*
Russ Hollenbeck