IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOIS M. DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:12-CV-00131 |
| VS. | § | |
| | § | |
| FORT BEND COUNTY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**ORDER**

Pending before the Court is Plaintiff Lois M. Davis' (the "Plaintiff") Motion for Attorney

Fees. (Doc. No. 105). Defendant Fort Bend County (the "Defendant") filed a response (Doc.

No. 106) thereto and the Plaintiff filed a reply (Doc. No. 107). Having carefully considered these

pleadings, the record in this case, and the applicable law, the Court grants the Motion in-part and

denies it in-part and awards Plaintiff $992,615 in attorney's fees and $52,288.34 in costs.

**I.**

The underlying facts of this lawsuit are well-known to the parties and to the Court and are

well-documented in the record, but the Court initially must note this case has had a long and

contentious history and that each step has required the expenditure of attorney's fees. With that in

mind, an abbreviated summary is still necessary. In January 2012, Plaintiff filed her initial

Complaint in this case. (Doc. No. 1). Plaintiff asserted claims of religious discrimination,

intentional infliction of emotional distress (related to Charles Cook's alleged sexual harassment of

her), and employment retaliation for reporting Cook's sexual harassment. (*Id.* at 6–8). Over a year

and a half later, this Court's predecessor granted Defendant's motion for summary judgment as to

all three claims and entered a final judgment against Plaintiff. (Doc. Nos. 16 and 17).

In October 2013, Plaintiff appealed her claims under Title VII (retaliation and religious discrimination) to the Fifth Circuit. *See Davis v. Fort Bend Cty.*, 765 F.3d 480 (5th Cir. 2014). The Fifth Circuit reversed the summary judgment order as to the religious discrimination claim but affirmed it as to the retaliation claim. *Id.* at 484-91. Defendant unsuccessfully requested an *en banc* rehearing and, when that was denied, it unsuccessfully pursued a writ of certiorari to the Supreme Court of the United States. *Fort Bend Cty. v. Davis*, No. 14-847, 135 S. Ct. 2804 (2015).

After the case returned to this Court on remand, trial was set for September 2016. However, in August 2016, this Court's predecessor granted Defendant's motion to dismiss on the theory that Plaintiff did not exhaust her administrative remedies related to the religious discrimination claim before filing this initial lawsuit. (Doc. No. 59). Once again, Plaintiff appealed to the Fifth Circuit (Doc. No. 61), who reversed the dismissal in June of 2018. *Davis v. Fort Bend Cty.*, 893 F.3d 300, 308 (5th Cir. 2018). Defendant again filed a petition for writ of certiorari, but this time the Supreme Court granted certiorari. *See Fort Bend Cty. v. Davis*, No. 18-525, 139 S. Ct. 915 (2019). In June 2019, the Supreme Court affirmed, in a 9-0 ruling, the Fifth Circuit's reversal of the dismissal of Plaintiff's religious discrimination claim. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843 (2019).

After the second remand back to this Court, a three-day juror trial was conducted that resulted in a verdict finding for Plaintiff on her religious discrimination claim and awarding her $349,506 in damages. (Doc. No. 99). The Court granted Plaintiff's Motion for Entry of Judgment and awarded pre- and post-judgment interest. (Doc. No. 104). Now, Plaintiff moves for the Court to award her nearly $1.15 million in attorneys' fees and over $56,000 in costs and expenses. (Doc. No. 105). Defendant filed a response in opposition, and Plaintiff replied. (Doc. Nos. 106 and 107).

## II.

Congress has authorized the award of reasonable attorney's fees to the prevailing party in Title VII disputes. 42 U.S.C. § 2000e–5(k) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ."); *see also CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016).

Before deciding whether an award of attorney's fees is appropriate, a court must determine whether the party seeking fees has prevailed in the litigation. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989); *Hensley v. Eckerhart*, 461 U. S. 424, 433 (1983). When a plaintiff obtains an enforceable judgment on the merits or a court-ordered decree, then she is considered the prevailing party. *See CRST Van Expedited*, 136 S. Ct. at 1646.

If it is determined that a party is a prevailing party that is entitled to attorney's fees, courts must then apply a two-step method for determining a reasonable attorney's fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016) (citation omitted). First, the court must calculate the "lodestar"—the number of hours reasonably spent multiplied by the appropriate hourly rate that is reasonable in the community for similar work. *Id.* at 392 (internal citation and quotation omitted); *see also Miraglia v. Bd. of Supervisors of the La. State Museum*, 901 F.3d 565, 577 (5th Cir. 2018). The second step the court must take is to determine whether the enhance or reduce the lodestar based on the circumstances of the particular case based on the twelve factors set out in *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). *Miraglia*, 901 F.3d at 577 (citing *Combs*, 829 F.3d at 393-94).

"The fee applicant bears the burden of proving that the number of hours and the hourly rate for which compensation is requested is reasonable." *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th

Cir. 1996). "A district court must 'explain with a reasonable degree of specificity the findings and reasons upon which the award is based.'" *Id.* (quoting *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990)).

## III.

Plaintiff obtained a judgment of nearly $350,000 based on the jury's finding that Defendant discriminated against her on the basis of her religion. (Doc. No. 107; *see also* Doc. No. 99). There can be no doubt then that she is the prevailing party on that claim. *See CRST Van Expedited*, 136 S. Ct. at 1646. Thus, Plaintiff is entitled to an award of attorney's fees under Title VII. *Id.*; 42 U.S.C. § 2000e–5(k). That being the case, the Court must determine the lodestar amount of Plaintiff's various attorneys and other professionals. *See Combs*, 829 F.3d at 391.

In total, based on the Court's review of the various exhibits to Plaintiff's Motion for Attorney's Fees, Plaintiff's various attorneys spent over 2,750 hours representing her in this case between October 2013 and January 2020.[1] Assuming Plaintiff was seeking an award for each of the 2,750 hours—and assuming the court would not alter the number of hours or the hourly rate— her request would likely exceed $1.3 million.[2] These totals do not include any work performed between the commencement of this case and the first judgment entered against Plaintiff, or the time spent by law students at the Stanford Supreme Court Litigation Clinic.

In her Motion for Attorney's Fees, Plaintiff states that she is not seeking to recover any fees incurred by Professors Fisher and Fletcher with the Stanford Law School. Additionally,

---

[1] This figure is combination of Joseph Y. Ahmad's 63 hours (Doc. No. 105, Ex. 4 at 4), Professor Jeffrey L. Fisher and Professor Brian Fletcher's combined 200 hours (Doc. No. 105, Ex. 5), and approximately 2,494 hours attributable to the law firm of Wright Close & Barger, LLP (Doc. No. 105, Ex. 3).

[2] This calculation is the sum of $43,785 billed by Mr. Ahmad (Doc. No. 105, Ex. 4 at 4), $210,000 billed by Professors Fisher and Fletcher (Doc. No. 105, Ex. 5), and at least $1,016,476 billed to the Wright Close & Barger attorneys. The Court notes that Wright Close & Barger's fee invoice (Doc. No. 105, Ex. 3) does not include the amount of fees that they have voluntarily waived. Thus, the Court's citation above of the aggregate attorney's fees sought is imprecise.

Plaintiff is only requesting an award for 2,329.5 hours for the attorneys at Wright Close & Barger's time (a reduction of 164.5 hours) and 49.7 hours for Ahmad's time (a reduction of 13.3 hours).

Based on these reductions, Plaintiff asserts that the lodestar amount for her case is $1,046,481.50. Defendant disagrees; it argues that Plaintiff's Motion should be denied it is entirety, or alternatively reduced because the number of hours and hourly rates are unreasonable.

## A.    Lodestar Calculation—Hourly Rates

The Court first begins with the hourly rates for Plaintiff's various attorneys and other professionals. For everyone except for Raffi Melkonian, the amount charged per hour was consistent throughout the case. Those rates were:

- Thomas C. Wright:         $500 per hour;
- Ronnie Flack:             $250 per hour;
- Russ Hollenbeck:          $500 per hour;
- Phyllis Darden-Caldwell:  $115 per hour; and
- Joseph Y. Ahmed:          $695 per hour.

As for Melkonian, he began this case as an associate for Wright Close & Barger. (*See* Doc. No. 105 at 3). As an associate, his firm charged $350 per hour for his services. (Doc. No. 105, Ex. 3 at 1-9). In 2016, however, Melkonian became a partner at Wright Close & Barger and therefore his billing rate increased to $500 (consistent with Mr. Wright and Mr. Hollenbeck). (*See id.* at 9).

The Court finds all of the hourly rates for the Wright Close & Barger professionals to be reasonable hourly rates among Houston law firms for a Title VII case. Indeed, Plaintiff's Motion lists a number of cases from the Southern District of Texas for similar employment litigation where hourly rates between $450 and $550 have been approved. (Doc. No. 105 at 14-15). *See, e.g.*, *Rebollar v. Ortega Med. Clinic, P.L.L.C.*, No. 4:18-cv-0846, 2019 WL 3975454, at *3 (S.D. Tex. Aug. 22, 2019) (agreeing that $500 and $300 per hour are both reasonable for employment litigation).

As for Ahmad's billing rate, it exceeds the limit in the cases cited by Plaintiff by nearly $150. The Court recognizes that actually presenting a case at trial to a jury is becoming increasingly rare. It also does not find $695 to be a shocking or unconscionable hourly rate for a Houston attorney in late 2019. Nevertheless, the lodestar analysis requires the Court to determine the reasonably appropriate hourly rate for similar work in the community. *Combs*, 829 F.3d at 392. Based on Plaintiff's own motion, the limit for employment discrimination work in this District appears to be $550 per hour. Accordingly, the Court reduces Ahmad's billing rate to that amount.

The Court notes that it could be argued that Wright's and Hollenbeck's rate of $500 an hour might have exceeded the reasonable rate in late 2013 and early 2014 for this case. *But cf. Whitnew Bank v. Hancock*, No. H-11-2164, 2013 WL 1404822, at *3-5 (S.D. Tex. Apr. 5, 2013) (approving hourly rates as high as $475 for a breach of contract case), but their hourly rates, at least for this case, have not changed since that time. The Court therefore finds that any arguably unreasonably high hourly rate in 2013 ($500) combined with the potentially low rate in 2019 ($500—as opposed to $695 or higher) averages out to a reasonable rate throughout the entire period of requested fees.[3]

Defendant argues that a reasonable hourly rate for an employment attorney in Houston is approximately $300 an hour. It relies on three cases from other districts within the Fifth Circuit (the Eastern District of Louisiana and the Western District of Texas) where courts found a reasonable rate to be between $200 and $325 per hour for FLSA cases. (*See* Doc. No. 106 at 10). The Court does not find these cases as persuasive as the ones cited by Plaintiff in her Motion.

Additionally, Defendant cites to a State Bar of Texas hourly rate sheet for attorneys for 2015, which states that the average labor-employment attorneys in Houston was $285 per hour

---

[3] In addition, a vast majority of the billed work in 2013, 2014, and 2015 was performed by Melkonian, at his associate rate of $350 per hour. (Doc. No. 105, Ex. 3 at 1-9).

(and $300 for attorneys with 16 or more years of experience. (*Id.* at 10-11; *see also* Doc. No. 106, Ex. 3 at 17, 19). The Court does not find this survey persuasive either. First, a survey of average hourly rates for 2015 does not help in determining the hourly rate for 2016 through 2019. As noted above, the most that one can argue is that the partners at Wright Close & Barger may have exceeded the normal hourly rates during the early years of this case. This Court does not agree. Moreover, if it did agree, it would find that those fees were offset by their relatively lower rate in the later years of the case. Moreover, nearly all of the work in 2015 was performed by Melkonian, who at the time charged near the range reflected by the survey. *See supra* note 3.

The Court also notes that over half of the hours incurred by the attorneys at Wright Close & Barger were spent working on the various appeals. (*See* Doc. No. 105, Ex. 3). The survey Defendant relies upon shows that appellate lawyers in Houston in 2015 earned more than the labor and employment lawyers. (*See* Doc. No. 106, Ex. 3 at 16).

Finally, and most importantly, the reliability of the survey is questionable, at best. Of the approximate 100,000 licensed and practicing attorneys in Texas, only 4,260 lawyers provided information on hourly rates. (*Id.* at 4). The survey suggests the number of attorneys who were asked to provide information was 94,150. (*Id.*). That is a response rate of about 4.5%. More specifically, the number of labor and employment attorneys in Houston that answered the survey was 65; and the number of Houston lawyers with 16 or more years of experience was 92. (*Id.* at 17, 19). Although it provides some evidence of reasonable hourly rates, the Court cannot conclude that the survey results of no more than 157 lawyers in Houston is statistically significant.

Accordingly, Defendant's objection to the hourly rates of Plaintiff's attorneys is overruled. The Court finds, with the revision it made above, that the hourly rates are reasonable.

## B. Lodestar Calculation—Reasonable Number of Hours

Given the extended period of time it took to litigate this case and the drastic difference between the various tasks performed (preparing for trial on one side of the spectrum and arguing before the United States Supreme Court on the other), the Court finds it appropriate to analyze the reasonable number of hours based on the stages of the litigation.[4] It will therefore evaluate the hours spent on: (1) the first appeal to the Fifth Circuit; (2) Defendant's requests for hearing *en banc* and writ of certiorari; (3) work preparing for trial before the dismissal; (4) the second appeal to the Fifth Circuit; (5) the appeal to the Supreme Court; and finally (6) the actual trial after the second remand.

Before turning to the first appeal, the Court notes that Defendant objected to a majority of Wright Close & Barger's time entries throughout the case for either having an insufficient description, block billing, or representing clerical work.[5] (*See* Doc. No. 106, Ex. 2). Having carefully reviewed Defendant's numerous objections and considering the applicable law, the Court finds that the complained of time entries provide enough detail to allow the court to determine the work performed and the reasonable amount of time to do that work. *See Geophysical Serv.*, 2020 WL 821879, at *11. The time entries include all legal tasks, not merely clerical or administrative duties. *See id.* at *12. Accordingly, Defendant's objections on these grounds are overruled.

---

[4] This case is also somewhat unique in the manner in which it proceeded. Usually, a case is filed, trial is held, and appeal(s) follow. Here, there have been two appeals to the Supreme Court and the Fifth Circuit before trial.

[5] Block billing is "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 864 n.23 (S.D. Tex. 2011) (internal citation and quotation omitted); *see also C & D Prod. Servs. v. Dir., Office of Worker's Comp. Programs*, 376 F. App'x 392, 394 (5th Cir. 2010) (describing block billing as listing "multiple activities in only one time entry.")."Block-billed entries do not preclude a fee award, 'as long as the evidence produced is adequate to determine reasonable hours.'" *Geophysical Serv., Inc. v. TGS-NOPEC Geophyiscal Co.*, No. H-14-1368, 2020 WL 821879, at *11 (S.D. Tex. Feb. 19, 2020) (quoting *DeLeon v. Abbott*, 687 F. App'x 340, 346 n.4 (5th Cir. 2017) (Elrod, J., concurring)).

1. **The First Appeal to the Fifth Circuit**

Plaintiff's attorneys at Wright Close & Barger performed approximately 143.2 hours of work (132.5 hour spent by Melkonian and 10.7 hours by Hollenbeck) on the first appeal to the Fifth Circuit. (Doc. No. 105, Ex. 3 at 1-3). The appeal sought reversal of the judgment against Plaintiff for both the retaliation and the religious discrimination claims. Plaintiff succeeded on the religious discrimination claim, but was unsuccessful in reviving her retaliation claim. *Davis*, 765 F.3d at 484-91.

First, Defendant argues that certain time entries are duplicates and/or reveal a lack of billing judgment. (*See, e.g.*, Doc. No. 106 at 6 ("There are numerous events for which multiple attorneys both prepared and appeared.")). For this period of time, it objects to both Melkonian and Hollenbeck traveling to and appearing at the Fifth Circuit oral argument. The Court does not believe it is unreasonable for two attorneys to attend oral argument for one client. That is especially reasonable when one of the attorneys is a younger and less experienced lawyer. Accordingly, Defendant's objections to these entries are denied.

Even so, the Court hereby reduces the attorney's time spent traveling to New Orleans and back by 50% to represent half the time spent on billable work. The Fifth Circuit has approved of courts cutting billable time by 50% for travel time, in the absence of documentation suggesting that any legal work was accomplished during that travel time. *See, e.g.*, *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008); *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993). The time entries on June 1, 2014 (2.5 hours for Melkonian) and June 2, 2014 (6.4 hours for Hollenbeck and 2.6 hours for Mr. Melkonian) provide no documentation that legal work was performed during the time they were traveling. Consequently, the Court reduces Melkonian's hours during this period by 2.55 hours (50% of 5.1 hours) and Hollenbeck's time by 3.2 hours (50% of 6.4 hours).

Defendant also claims that all of Plaintiff's fees should be reduced by 2/3 because she only succeeded on one of her three claims and because Plaintiff's attorneys did not attribute their hours in a claim-by-claim basis. There are several problems with Defendant's argument. First, it seeks a 1/3 reduction of all hours spent litigating this case for Plaintiff's intentional infliction of emotional distress claim, even though that claim was disposed of early on and never argued about or relevant during the dates from which Plaintiff seeks attorney's fees. Similarly, after the Fifth Circuit's first opinion in August 2014, Plaintiff's retaliation claim was not relevant to this case. Thus, reducing hours for the other stages of litigation would be improper since this claim was not at issue then.

The time Melkonian and Hollenbeck devoted towards the retaliation claim in the first appeal, however, raises a more challenging issue. On the one hand, "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley*, 461 U.S. at 435. On the other hand,

> the plaintiff's claims for relief [may] involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hour expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

*Id.*; *see also Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1169 (5th Cir.1991) ("[W]here time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."), *cert. denied*, 504 U.S. 911 (1992); *Nash v. Chandler*, 848 F.2d 567, 572 (5th Cir.1988) (finding no clear error where unsuccessful claims "highly relevant" to successful claim).

The Court recognizes that Plaintiff's retaliation and religious discrimination claims share the same underlying facts (i.e., Plaintiff's employment history with Defendant). Plaintiff's two Title VII claims are similar in subject matter and some general employment discrimination work will relate to both. Nevertheless, the Court cannot say that the retaliation claim is "highly relevant"

to the religious discrimination claim. *Nash*, 848 F.2d at 572. In addition, Plaintiff (or, more accurately, her attorneys) has not shown that segregating the two Title VII claims would have been too difficult. Consequently, the Court will further reduce both Melkonian's hours and Hollenbeck's hours in half.

Applying this 50% reduction, Melkonian's hours spent on the first appeal to the Fifth Circuit is reduced by a total of 67.53 hours (2.55 hours for travel and 64.73 hours for the retaliation claim). The Court also reduces Hollenbeck's time on the first appeal by 6.95 (3.2 hours for travel and 3.75 for the retaliation claim).

### 2. Defendant's Requests for Hearing *En Banc* and Writ of Certiorari

Between August 2014 and June 2015, Defendant unsuccessfully sought rehearing from the Fifth Circuit and to have its appeal considered by the United States Supreme Court as to the Fifth Circuit panel's decision concerning Plaintiff's religious discrimination claim. Plaintiff was required to file a reply to Defendant's *en banc* petition and an opposition to its petition for writ of certiorari. Specifically, Melkonian and Hollenbeck spent about 220 hours on Plaintiff's case during this time. The Court overrules Defendant's objections to these time entries and finds them to be reasonable. Accordingly, it makes no reduction to the lodestar figure for this phase of trial.

### 3. Work Preparing for Trial Before the Dismissal

The parties prepared for trial and argued Defendant's motion to dismiss between June 11, 2015 and August 20, 2016. During this time period, Plaintiff's attorneys spent 500 hours on the case and incurred over $200,00 in attorney's fees.[6] The Court overrules Defendant's objections to these time entries and finds them to be reasonable. Accordingly, it makes no reduction to the lodestar figure for this phase of trial.

---

[6] As noted above, beginning in 2016 Mr. Melkonian became a partner and his billing rate was raised to $500 per hour.

### 4. The Second Appeal to the Fifth Circuit

The parties returned to the Fifth Circuit between August 25, 2016 and October 13, 2017. In order to secure another reversal (and to keep Plaintiff's case alive), Plaintiff's attorneys spent 395 hours, which amounts to $171,200 in fees. The Court overrules Defendant's objections to these time entries and finds them to be reasonable.[7] Accordingly, it makes no reduction to the lodestar figure for this phase of trial.

### 5. The Appeal to the Supreme Court

Following the Fifth Circuit's second decision in this case, Defendant again asked the United States Supreme Court to review this case, which is ultimately agreed to do so. From June 2018 through April 2019, Plaintiff's attorneys performed various tasks including writing an opposition to Defendant's writ of certiorari, writing a merits brief after certiorari was granted, meeting with the United States Solicitor General and other amicus groups to discuss the case, participating in several moot court arguments, and, of course, participating in the actual oral argument. The amount of time spent to perform all of those tasks is approximately 584 hours— not including the work done by the Stanford Law Clinic.

The Court makes the same 50% reduction as to travel as it identified before. Accordingly, the following time entries are cut in half:

- 3.5 hours on January 24, 2019 (Melkonian);
- 3.5 hours on January 24, 2019 (Hollenbeck);
- 3.5 hours on January 25, 2019 (Melkonian);
- 3.5 hours on January 25, 2019 (Hollenbeck);
- 4.5 hours on April 11, 2019 (Melkonian);
- 4 hours on April 12, 2019 (Melkonian);
- 4 hours on April 15, 2019 (Melkonian);
- 4 hours on April 17, 2019 (Hollenbeck);

---

[7] The Court does not reduce any hours for traveling during this period because Plaintiff's lawyers did not list any travel related to the second Fifth Circuit appeal. In particular, on October 13, 2017, Wright, Hollenbeck, and Melkonian simply list "attending" and/or participating in the oral argument. (*See* Doc. No. 105, Ex. 3 at 25).

- 4 hours on April 22, 2019 (Melkonian); and
- 4 hours on April 22, 2019 (Hollenbeck).

Thus, a total of 19.25 hours (11.75 hours from Melkonian and 7.5 hours from Hollenbeck) are reduced from this time period. That brings the total amount of hours working on the Supreme Court appeal to about 565. The Court notes that some individuals could disagree as to whether all of this time was reasonably necessary. It, however, concludes that this time was reasonable and necessary in this case for a variety of reasons, including: (1) very few attorneys from Houston ever argue before the Supreme Court; (2) Plaintiff's attorneys are not specialists in Supreme Court practice and thus had to overcome a learning curve; (3) Defendant's counsel was a very experienced advocate before the Supreme Court; and (4) oral argument was held only three months after the justices decided to hear the case. Moreover, Plaintiff did succeed at the Supreme Court in a 9-0 decision—the best result one could hope to obtain.

For these reasons and based upon the evidence, the Court overrules Defendants objections for this time period and will only reduce the lodestar figure by the 19.25 hour for travel, as explained above.

### 6. The Trial

Finally, since the Supreme Court's decision in early June 2019, Plaintiff's attorneys billed for a combined 667.4 hours and $252,072.50 in preparing for trial, trying this case, and obtaining a judgment after the jury returned a verdict in Plaintiff's favor.

### a. Mr. Ahmad

The Court first begins with Ahmad's 49.7 hours incurred between October 18, 2019 and November 1, 2019. Defendant does not object to any specific time entry, but rather objects that his inclusion in the case was unnecessary because of the "multiple senior and experienced attorneys"

available for trial. Plaintiff does not directly address this complaint. (*See* Doc. No. 107 at 13 (describing Ahmad's fees as unchallenged, objected to, or discussed)).

The Court generally agrees with Defendant that multiple senior level trial attorneys are not necessary, especially for a one issue Title VII case. Defendant's objection as to Ahmad, however, is misplaced. He and Hollenbeck divided a vast majority of the work trial work. The Court cannot say that his efforts of either was superfluous or unnecessary. In fact, they were just the opposite. As the Court will discuss below, the time spent by Melkonian and Wright—both whom primarily served as advisory appellate counsel—deserves more appropriate scrutiny for the time they billed during trial.

Accordingly, the Court overrules Defendant's objections as to Ahmad's billing entries.

### b.    The Wright Close & Barger Attorneys and Staff

The time that Plaintiff's professionals at Wright Close & Barger—including Melkonian, Hollenbeck, Wright, Flack, and Darden-Caldwell—spent working on this case immediately before, during, and after trial is 617.7 hours. By the Court's calculation, that amounts to over $217,000.

As suggested above, the Court must address Melkonian and Wright's time entries during the three-day trial. Both are partners at Wright Close & Barger and both billed $500 per hour in this case. These attorneys are primarily appellate lawyers. During the trial they participated in arguments about legal matters, such as the jury charge and motions for judgment as a matter of law. Thus, the Court cannot say their work was unreasonable or their attendance at trial was unnecessary.

That being said, Defendant is correct that Plaintiff had (at least) two highly competent and experienced trial lawyers and several others working at trial. Melkonian's and Wright's time for

observing the trial was therefore not as crucial a factor to Plaintiff's success as were the efforts of her other lawyers. Moreover, requiring Plaintiff (or, more accurately, Defendant) to pay for every hour that a partner-level attorney sat in a courtroom strikes the Court as unreasonable.

Accordingly, the Court will cut Melkonian's and Wright's time observing trial in half. That is not to say the other work they performed to assist the other lawyers in preparing for trial was not reasonable; nor is the Court striking the time Melkonian and/or Wright actually participated in the trial proceedings. Simply put, the Court is downwardly adjusting their time entries that allude to "attend[ing] trial."

Melkonian billed 22.5 hours for attending the three-day trial. Wright, on the other hand, listed his time for doing that task as 17.2. The Court therefore reduces their hours by 11.25 and 8.6, respectively. As such, Plaintiff's lodestar amount is reduced by 19.85 hours.

The remaining time billed by the attorneys and staff for Wright Close & Barger during this time are reasonable and the Court overrules Defendant's objections to the contrary.

### 7. Conclusion

The Court approves Ahmad's number of hours of 49.7. It, however, reduces his hourly rate from $695 to $550. Ahmad's lodestar amount for this case is therefore $27,335.

Further, the Court approves of the hourly rates for each of the attorneys at Wright Close & Barger. With regard to Flack and Darden-Caldwell, the Court approves the number of hours Plaintiff requests they be compensated for (103.9 and 166.7 hours, respectively). Accordingly, their lodestar amounts are $25,975 for Flack and $19,170.50 for Darden-Caldwell.

Wright's hourly rate is approved by the Court, but his number of hours are reduced by 8.6. He therefore spent 22.4 on this case; his lodestar amount is $11,200.[8] The Court also approves

---

[8] The number of hours Wright identified as seeking compensation were originally 31. (Doc. No. 105, Ex. 3 at 46).

Hollenbeck's hourly rate of $500 per hour, but reduces his hours by 14.45.[9] Hollenbeck's lodestar amount is therefore $239,325.

Lastly, both Melkonian's hourly rate as an associate ($350) and then later as a partner ($500) are reasonable. The Court, however, reduces his hours spent on this case as an associate by 67.53.[10] Melkonian's associate lodestar figure is $122,559.50. Likewise, the Court will subtract 23 hours from Melkonian's billed time as a partner; and so his partner-level lodestar is $547,050.[11]

Having determined the appropriate lodestar amounts for each individual attorney that Plaintiff requests an award for, the Court finds that the aggregate lodestar figure in this case is $992,615.

## IV.

The lodestar amount is presumed reasonable. *Combs*, 829 F.3d at 392 (citing *Perdu*, 559 U.S. at 553-54). Nevertheless, the court may enhance or decrease the lodestar amount based on the twelve factors set out in *Johnson*. These factors are used to determine if the lodestar rate should be increased or decreased or fixed as is, and they include:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[9] The number of hours Hollenbeck identified as seeking compensation were originally 493.1. (Doc. No. 105, Ex. 3 at 46). Following the 14.45 hour reduction, his total is 478.65.

[10] The number of hours Melkonian identified as seeking compensation as an associate were originally 417.7. (Doc. No. 105, Ex. 3 at 46). Following the 67.53 hour reduction, his total is 350.17.

[11] The number of hours Melkonian identified as seeking compensation as partner were originally 1,117.1. (Doc. No. 105, Ex. 3 at 46). Following the 23 hour reduction, his total is 1,094.1.

*Johnson*, 488 F.2d at 717-719. To the extent these factors are duplicative of the lodestar factors, they are not counted twice. *See, e.g.*, *Perdue*, 559 U.S. at 554; *Ramirez v. Lewis Energy Grp., L.P.*, 197 F. Supp. 3d 952, 956 (S.D. Tex. 2016).

Enhancements to the lodestar amount must be rare because "instead of merely guaranteeing adequate representation, they can result in a windfall to attorneys." *Combs*, 829 F.3d at 393 (citing *Perdue*, 559 U.S. at 559 & n.8). The circumstances in which an enhancement is necessary are "indeed rare and exceptional, and require specific evidence that the lodestar fee would not have been adequate to attract competent counsel." *Perdue*, 559 U.S. at 554 (internal citation and quotation omitted). In other words, "excellent result should usually result only in 'a fully compensatory fee'—the lodestar." *Combs*, 829 F.3d 388 at 393 (citing *Hensley*, 461 U.S. 424, 435 (1983)).

Plaintiff requests an additional $101,250 in fees, which represents a $250 enhancement on the 405 hours that Wright Close & Barger worked representing Plaintiff before the Supreme Court.[12] She argues that all 12 *Johnson* factors weigh in favor of such an enhancement. Defendant opposes any enhancement and argues that several of the *Johnson* factors weigh heavily towards reducing Plaintiff's attorneys' fees.

The Court first notes that several of the Johnson factors were considering in determining the lodestar amount for Plaintiff's lawyers. For example, the time and labor required for multiple years and several appeals is encapsulated within the reasonable number of hours each attorney spent; and the time limitation for the Supreme Court argument was considered when determining whether Wright Close & Barger's attorney's work was reasonable. Additionally, the skill required to perform the legal services, customary fee charged, experience and reputation of the attorneys,

---

[12] The 405-hour number is before the Court's reduction of 19.25 hours. Thus, a more accurate enhancement total would be $96,437.50 (385.75 hours X $250).

and awards in similar cases all factored into each attorney's reasonable hourly rate. That being the case, factors one, three, five, seven, nine, and twelve are duplicative of the lodestar analysis and thus are not counted again. *See, e.g., Perdue*, 559 U.S. at 554; *Ramirez*, 197 F. Supp. 3d at 956.

Plaintiff claims that factor two supports an enhanced fee because her case included two appeals to the Fifth Circuit and one appeal to the United States Supreme Court. It is true this case took a most unusual route to trial and presented at least one somewhat unusual issue. That being said, this *Johnson* factor usually refers to "cases of first impression" and cases that "may 'make new law.'" *Johnson*, 488 F.2d at 718. By that definition, Plaintiff's appeals were not novel or unique. *See, e.g., Fort Bend Cty.*, 139 S. Ct. at 1848 ("In recent years, the [Supreme] Court has undertaken to '[t]o ward off profligate use of the term [jurisdiction].'") (quoting *Sebelius v. Auburn Reg'l Med. Cent.*, 568 U.S. 145, 133 (2013)); *id.* at 1849-50 ("The Court has characterized as nonjurisdictional an array of mandatory claim-processing rules and other preconditions to relief.") (citing cases); *Davis*, 893 F.3d at 304-05 ("Recently, we held that *Womble* and *Young* control under our rule of orderliness, so 'the exhaustion requirement under Title VII is not jurisdictional.'") (quoting *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 169 (5th Cir. 2018)). That being said, the Court knows from the trial that the law concerning religious discrimination and failing to accommodate is not well-settled law. Accordingly, this factor is neutral.

Plaintiff says the fourth factor supports her position that she is entitled to a fee enhancement because her attorneys were unable to work on other matters (many of which would have been billed by the hour) to work on her case (on contingency). *Johnson* explains that, when considering this factor, courts should consider whether a lawyer's business "is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes."

488 F.2d at 718. There is no suggestion and certainly no evidence that representing Plaintiff caused any of her attorneys to be conflicted or absent from representing other clients. As for the argument that the attorneys could not bill other clients, the Court does not see how their participation here is different than that of any other attorney handling a case. Thus, that fact alone would hardly even warrant a fee enhancement. The only remaining pro-enhancement argument is that Plaintiff's attorney's other work would have been billed hourly and so they would have been paid much sooner. While this seems to be a duplicate consideration to the sixth factor, the Court will nevertheless consider it here as well. Accordingly, this factor is either neutral or slightly in favor of an enhancement.

As stated above, Plaintiff retained her counsel on a contingency fee basis. Her Motion states that this case required her lawyers to take "extremely significant risks" and that "risky, ground-breaking case [like this one] is where the factor should weigh most heavily." (Doc. No. 105 at 17-18). Although there is no evidence for these statements, the Court will accept them. Consequently, this factor weighs in favor of an enhancement.

As for factor eight, the Court notes that it partially considered the results at the Supreme Court when determining those hours were reasonable. Reconsidering it here would be improper. As for Plaintiff's success at trial, she represents that it may represent the "largest single-plaintiff discrimination award under Title VII in Texas after trial in the past five years." (*Id.* at 19). That is obviously a successful result. Defendant, however, is also correct that Plaintiff only succeeded on one of her original claims and only recovered a portion of the damages she sought. Overall, the Court finds that this factor weighs in Plaintiff's favor.

Factor nine is to compensate lawyers who "can have an economic impact on his [or her] practice which can be considered by the Court." *Johnson*, 488 F.2d at 719. In other words, it is

designed to offset the unpleasantness or even scorn a lawyer may receive from the community or his or her contemporaries. *Id.* Plaintiff's argument that her case was undesirable because it required an appeal (in fact, multiple appeals) before trial is not what the undesirability factor considers. Moreover, the Court doubts that Plaintiff's case before the Supreme Court—the time period she seeks an enhancement for—was undesirable. Indeed, the Court believes that many attorneys across the country would have been willing to represent her. Accordingly, this factor weighs against a fee enhancement.

Lastly, Wright Close & Barger represented Plaintiff at both the trial court and courts of appeals for over seven years. That is an unusual amount of time. However, under this order those attorneys will be compensated for nearly all of their hours during that time period. Moreover, the Court does not agree that Defendant's decision to hire leading Supreme Court practitioners affected the nature and length of their professional relationship with Plaintiff. This factor therefore weighs against a fee enhancement as well.

Of the twelve Johnson factors, the court finds that most were already considered in the lodestar analysis and that of those remaining three suggest a fee enhancement may be appropriate and that two advise against an enhancement (or for a reduction). Since enhancements are "rare and exceptional" the Court is not convinced that any deviation from the lodestar figure is appropriate. *Perdue*, 559 U.S. at 554. This is not to say that Plaintiff's counsel did not represent her interests admirably and help her obtain an excellent result. Rather, the Court believes that Plaintiff's "excellent result" should only entitled her to the full lodestar amount. *See Combs*, 829 F.3d at 393.

The Court therefore will not award Plaintiff any enhancement nor consider any downward departure on her attorney's fees award.

# V.

Plaintiff also seeks to recover the reasonable costs spent on this case. The costs she identifies total $56,333.34. Defendant does not address these costs in its response.

Generally speaking, a court "may tax as costs the following":

(1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services.

28 U.S.C. § 1920; *see also Rebollar*, 2019 WL 3975454, at *6.

The Fifth Circuit, however, has interpreted 42 U.S.C. § 2000e-5(k)'s attorney's fees clause to include "reasonable out-of-pocket expenses incurred by the attorney that are normally charged to a fee-paying client." *Mota v. Univ. of Tex. Hous. Health Sci. Cent.*, 261 F.3d 512, 529 (5th Cir. 2001) (quoting *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 557 (5th Cir. 1987)). Expenses such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs are therefore recoverable in Title VII cases. *Id.*

Most of Plaintiff's incurred costs fall within the categories approved by the Fifth Circuit. (*See* Doc. No. 105, Ex. 3 at 47-49). The Court must note three specific items that raise concern, though. Specifically, the video deposition of T. Webb on January 1, 2016 for $708.50, the May 12, 2016 mediation fee of $1,900, and the October 24, 2019 mediation fee of $2,145. (*Id.* at 48-49). In *Mota*, the Fifth Circuit vacated a district court's award of costs from videotaped depositions and costs of mediation. 261 F.3d at 530. It determined that neither costs fell into a provision of 28 U.S.C. § 1920; and since the Supreme Court has admonished that statute be strictly construed,

such costs were not awardable under Title VII cases. *Id.* at 529-30 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987)).

Section 1920(2), however, has been amended in 2008 to state that costs include "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Accordingly, "the cost for videotaped depositions is now recoverable under § 1920(2)." *Mata v. Caring for You Home Health, Inc.*, No. 7:13-cv-287, 2015 WL 12780641, at *3 (S.D. Tex. May 12, 2015) (quoting *Baisden v. I'm Ready Prods.*, 793 F. Supp. 2d 970, 976 (S.D. Tex. 2011)). The Court therefore will not reduce Plaintiff's costs by the $708.50 spent on T. Webb's video deposition.

The money Plaintiff spent on mediation fees does not enjoy a similar fate. The Court has not identified any amendment to 28 U.S.C. § 1920 that would encompass mediation expenses. Additionally, other courts in the Fifth Circuit have continued to delete mediation expenses from prevailing party's recovered costs. *See, e.g.*, *Morales v. Safeway Inc.*, No. 4:17-CV-825, 2020 WL 1190126, at *2 (E.D. Tex. Mar. 12, 2020); *Stevenson v. Lasalle Corr. Transp., LLC*, No. 3:13-CV-2105-N, 2015 WL 11120525, at *5 (N.D. Tex. Apr. 21, 2015). Thus, the Court reduces Plaintiff's costs by $4,045 for the two line items for mediations fees.

Having considered the other costs and determined they are reasonable expenses consistent with applicable law, the Court accepts them and awards Plaintiff $52,288.34 in out-of-pocket expenses.

## VI.

Plaintiff prevailed on her religious discrimination claim against Defendant. She is therefore entitled to reasonable attorney's fees and costs in litigating that claim. The Court determines that Plaintiff's lodestar attorney's fees figure is $992,615 and that no enhancement or reduction from

that figure is warranted. It therefore orders Defendant to pay Plaintiff reasonable attorneys' fees of $992,615.[13]

The Court also finds that Plaintiff is entitled to recover $52,288.34 in costs associated with this case. It therefore orders that Defendant pay Plaintiff's reasonable costs of $52,288.34.

For the foregoing reasons, Plaintiff's Motion for Attorney Fees (Doc. No. 105) is **granted in part** and **denied in part.**

Signed at Houston, Texas, this 26 day of March, 2020.

_____
Andrew S. Hanen
United States District Judge

---

[13] If Plaintiff is required to defend her judgment or this order on appeal and succeeds, she may submit limited additional briefing in support of an award of attorney's fees and costs, if any, spent on such appeal.